918 F.2d 180
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald MINNIECHESKE, Plaintiff-Appellant,
v.
Timothy L. VOCKE, et al. Defendants-Appellees
 No. 89-1347.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 27, 1990.[1]
Decided Oct. 19, 1990.
 
 Before CUDAHY, POSNER and RIPPLE, Circuit Judges.
 
 ORDER
 BACKGROUND
 
 1
 In 1981 The Life Science Church, several of its trustees and individual members filed a pro se complaint against various state, federal and local officials in the United States District Court for the Eastern District of Wisconsin. The allegations in the original pro se complaint and its subsequent amendments through counsel stem from the fact that the church and its membership had been the subject of several investigations and prosecutions involving numerous alleged tax, sanitation, firearms, zoning and criminal violations. The complaint charged that the named governmental defendants conspired to violate, inter alia, the plaintiffs constitutional rights of free speech, free association and the free exercise of religious beliefs.
 
 
 2
 This is the second time this court has addressed this specific cause of action. Our previous unpublished order of March 27, 1984 affirmed in part and reversed in part the district court's: (1) dismissal of plaintiffs amended complaint for failure to satisfy the requirements of Fed.R.Civ.P. 8(a); and (2) award of the defendants costs and attorneys' fees.
 
 
 3
 Following our 1984 remand, subsequent pre-trial proceedings were held in the district court. All defendants, at various stages, were eventually granted dismissal or summary judgment. This pro se appeal has followed.
 
 ANALYSIS
 
 4
 This court is not unfamiliar with the facts which surround this case. Various individual members of the Life Science Church and the church itself have sought judicial redress on appeal for numerous alleged injuries stemming from the same governmental action. The apparent foundation for these numerous appeals involves essentially the same occurrence--a zoning enforcement action affecting a trailer park in Shawano County, Wisconsin. See Bauman, et al. v. Shawano County, et al., Nos. 87-2945, 87-2946, 87-2948 and 87-3105 (unpublished order dated February 13, 1990) (numerous civil rights claims and allegations of unconstitutional conduct against various state officials and private companies related to the enforcement of a writ of assistance which removed the non-conforming trailer park on the grounds of the Life Science Church) (case no. 87-2946 involved one of the named plaintiffs in the instant case, Donald J. Minniecheske); Bobby O. Phillips v. Shawano County, et al., No. 88-2466 (unpublished order dated April 20, 1990) (a resident of the trailer park's claim under 42 U.S.C. Sec. 1983 stemming from his arrest for disorderly conduct by the Shawano County sheriff during a warrantless search of a van when the non-conforming trailers were removed; the search yielded a tear gas canister).
 
 
 5
 This appeal raises many of the same issues and adds a conspiracy claim against the governmental defendants. The district court found no legal or factual basis for holding the defendants liable for any of the various injuries alleged by the plaintiffs. We agree. After reviewing the decisions of the district court and the record before us on appeal, we have determined that the district court properly identified and resolved the issues before us on appeal. We find many of the claims raised here to be duplicative of issues already raised and resolved in previous appeals. We also find appellants remaining allegations to be without substance, and need not address them here.[2] ,[3]
 
 
 6
 Therefore, we affirm the decision of the district court for the reasons stated in the attached memorandum opinions.
 
 
 7
 AFFIRMED.
 
 ATTACHMENT
 
 8
 UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN
 
 
 9
 LIFE SCIENCE CHURCH, et al., Plaintiffs,
 
 
 10
 vs.
 
 
 11
 TIMOTHY L. VOCKE, et al., Defendants.
 
 
 12
 Case No. 81-C-239.
 
 
 13
 May 18, 1987.
 
 DECISION AND ORDER
 
 14
 Plaintiffs commenced this civil rights action pursuant to 42 U.S.C. Secs. 1981, 1983, 1985(2) and 1988, alleging that the defendants violated, and conspired to violate, their constitutional rights of freedom of religion, free speech, right of association, right to bear arms, protection from unreasonable searches and seizures, protection from issuance of a warrant without probable cause, and right not to be deprived of property without due process of law. The plaintiffs seek monetary damages, and injunctive and declaratory judgment relief.
 
 
 15
 Plaintiffs are the Life Science Church and various persons associated with the church. The defendants are several federal, state and local officials who allegedly plotted to destroy the Life Science Church and its membership allegedly because some plaintiffs are members of the Posse Comitatus.
 
 BACKGROUND
 
 16
 This action was instituted on March 6, 1981, and was randomly assigned to the Honorable John W. Reynolds, then the Chief Judge for this district. By Decision And Order of October 29, 1981, Judge Reynolds found that the plaintiffs' amended complaint failed to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure (mandating a short and plain statement of the grounds for the court's jurisdiction and of the claim for relief) and, accordingly, dismissed this action.
 
 
 17
 The Seventh Circuit Court of Appeals, in an unpublished Order dated March 27, 1984, reversed Judge Reynolds' dismissal order on most of the paragraphs of the amended complaint and remanded the case for further proceedings. On remand, Judge Reynolds recused himself from this case. This matter was thereafter randomly reassigned to this Court.
 
 
 18
 The Court has conducted several procedural and substantive proceedings in this action. In its Decision And Order of November 13, 1984, the Court struck the plaintiffs' second amended complaint. Further, by Order of August 29, 1985, the Court (1) denied the plaintiffs' motion for a temporary restraining order, (2) denied plaintiffs' motions for an extension of time and to strike the defendants' motions, (3) granted the motions of defendants Stadelman, Machmueller, Martzke, Cornett, Schroder, Kielblock, and Alft for a dismissal of the amended complaint due to insufficient service of process, and (4) granted defendant Prebe's motion for summary judgment. Further, the Court allowed plaintiffs 90 days from June 12, 1985, in which to complete all discovery. Subsequently, the following motions were filed and are currently pending:
 
 
 19
 1) plaintiffs' motion to reopen discovery;
 
 
 20
 2) defendants Vocke's, Brennan's and Nagy's renewed motions to dismiss; and
 
 
 21
 3) defendant Nagy's motion for summary judgment.
 
 
 22
 By today's Decision And Order, the Court resolves these pending motions and schedules further proceedings.
 
 DISCUSSION
 
 23
 I. Plaintiffs' Motion to Reopen Discovery.
 
 
 24
 The plaintiffs wish to reopen discovery to take the depositions of five persons. In view of the facts underlying this motion and in light of a previous scheduling order and an unequivocal record of missed deadlines, the Court denies plaintiffs' motion to reopen discovery.
 
 
 25
 The Court relies on the facts set forth in the plaintiffs' moving papers since no responsive briefs were filed opposing this motion. On June 24, 1985, law enforcement officials executed a writ of assistance on property of the Life Science Church located in Tigerton, Wisconsin. This writ was based upon a July 10, 1981 judgment in the Shawano County Circuit Court entered by Acting Judge Timothy L. Vocke. The judgment ordered the removal of illegally placed mobile homes, septic systems, and sanitary systems and enjoined any future placement of these items on the property without first obtaining permits.
 
 
 26
 The plaintiffs charge that the law enforcement officials exceeded the scope of authority contained in the writ, damaged the homes and personal property, auctioned off exempt property, cut utility lines, presented no search warrant, restrained church members from interfering, and terrorized church members. The plaintiffs also allege that the writ had previously been complied with and, thus, there was no outstanding writ to execute.
 
 
 27
 The plaintiffs base their motion to reopen discovery on their asserted need for more information relating to the allegedly wrongful damage and removal of property. The plaintiffs also claim they need this information to respond to defendant Nagy's motion for summary judgment. In an attempt to justify their failure to conduct this discovery during the 90-day period following June 12, 1985, plaintiffs contend that this evidence that they wish to discover would not have been available in the 90-day discovery period allowed by the Court's order. Plaintiffs also contend that they understood that "law enforcement officials were to refrain from taking action against plaintiffs herein pursuant to the purported writ of assistance until after the ninety-days [of discovery]."
 
 
 28
 The decision whether to grant a motion to reopen discovery rests within the sound discretion of the Court. Geremia v. First National Bank of Boston, 653 F.2d 1 (1st Cir.1981); Union Mechling Corp. v. Carmadelle, 624 F.2d 677 (5th Cir.1980); N.L.R.B. v. Seafarers International Union of North America, 496 F.2d 1363 (5th Cir.1974); U.S. on behalf and for the Benefit of Army Athletic Association v. Reliance Insurance Co., 799 F.2d 1382 (9th Cir.1986); Parrott v. Wilson, 707 F.2d 1262 (11th Cir.1983). As reflected in the Court's Order of August 29, 1985, a hearing was held before the Court on June 12, 1985, whereat the Court ordered that plaintiffs be allowed 90 days from June 12, 1985, in which to complete all discovery.
 
 
 29
 For the five following reasons, the Court will deny plaintiffs leave to conduct further discovery. First, the Court cannot understand how the plaintiffs could interpret the Court's ruling at the June 12th hearing to mean that law enforcement officials would refrain from executing the writ of assistance until after the discovery period when, on the same day, the Court denied plaintiffs' motion for a temporary restraining order on that same topic.
 
 
 30
 Second, plaintiffs do not explain the necessity for taking depositions to respond to defendant Nagy's motion for summary judgment.
 
 
 31
 Third, plaintiffs contend in an affidavit by a private investigator that the removed property is evidence which needs to be preserved in some fashion. The writ of assistance was based on a judgment of the Shawano County Circuit Court dated almost four years before the writ was actually enforced. Further, as stated in plaintiffs' motion for a temporary restraining order, the writ was issued in 1984, at least six months before it was enforced. Thus, for at least six months, and quite possibly for four years, plaintiffs had notice that the property in issue was subject to removal. Such a period provided ample time to preserve the removed property as evidence through photographs. To the extent that the plaintiffs wish to preserve the evidence in its allegedly damaged state resulting from the writ's enforcement, the next point addresses this issue.
 
 
 32
 Fourth, inasmuch as plaintiffs contend that public officials damaged their property in excess of the writ's authorization, plaintiffs state a cause of action different from those already set forth in this case. Plaintiffs may not use a motion to reopen discovery as a vehicle for alleging facts supportive of a cause of action not contained in the pleadings.
 
 
 33
 Finally, on at least three prior occasions, this Court has allowed the plaintiffs extensions of time to submit responses to various motions filed by the defendants. In each instance, the plaintiffs filed nothing. These repeated failures to take advantage of the Court's several previously granted extensions renders disingenuous plaintiffs' plea for the necessity of yet another extension.
 
 
 34
 Accordingly, plaintiffs' motion to reopen discovery will be denied.
 
 
 35
 II. Defendants' Immunity for Liability for Civil Damages.
 
 
 36
 A. Defendants Brennan's and Vocke's Renewed Motions to Dismiss.
 
 
 37
 The plaintiffs allege that defendants Brennan and Vocke, both Wisconsin State Circuit Court judges, along with the other defendants, conspired to destroy the Life Science Church and deprive the plaintiffs of their above-mentioned constitutional rights. Paragraph 4(h) of Count I of the amended complaint specifically mentions Brennan as conspiring with the other defendants by signing a search warrant based on two allegedly false affidavits. Plaintiffs allege that this search warrant permitted various defendants to illegally trespass and confiscate property and to commit an assault and battery on plaintiff Stockheimer.
 
 
 38
 Paragraph 4(n) of Count I of the amended complaint alleges that Vocke ordered the removal of the mobile homes, septic systems, and sanitary systems from the Life Science Church property. In Count III, the plaintiffs allege that Vocke issued an opinion and judgment denying plaintiffs' request to intervene in a state court action identified only as "Cause No. 80-CV-172," and also ordered that the Life Science Church be disbanded. As to defendants Brennan and Vocke, the plaintiffs seek monetary damages; an order enjoining Vocke's order to remove various structures; a return of the confiscated property; and a declaration that the above-mentioned affidavits, search warrant and orders are void.
 
 
 39
 Defendants Brennan and Vocke move to dismiss based upon the principles of absolute judicial immunity, absention, and res judicata. As more fully detailed below, the Court finds that the doctrine of absolute judicial immunity cloaks defendants Brennan and Vocke from civil liability for damages pursuant to the allegations contained in plaintiffs' amended complaint.
 
 
 40
 On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true, and, if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed." Mathers Fund, Inc. v. Colwell Co., 564 F.2d 780, 783 (7th Cir.1977).
 
 
 41
 The doctrine of absolute judicial immunity was first announced by the United States Supreme Court in Bradley v. Fisher, 13 U.S. (1 Wall.) 335 (1871), which held that a judge was not to be held liable in civil damages for judicial acts committed while exercising his jurisdiction, even if accused of acting maliciously and corruptly. See also Pierson v. Ray, 386 U.S. 547 (1967); Stump v. Sparkman, 435 U.S. 349 (1978); Eades v. Sterlinske, 810 F.2d 723 (7th Cir.1987) (Wisconsin judge who altered trial transcript and docket sheet was immune from Sec. 1983 action). Moreover, the doctrine of absolute judicial immunity is not limited by 42 U.S.C. Sec. 1983. Pierson, 386 U.S. at 554.
 
 
 42
 The doctrine of absolute judicial immunity is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868) quoted in Bradley, 13 U.S. (1 Wall.) at 349. The Supreme Court in Bradley identified five policy reasons supporting the doctrine of absolute judicial immunity:
 
 
 43
 1) A judge must exercise his duty to make decisions free of worries about personal liability for making those decisions.
 
 
 44
 2) Losing parties may be quick to accuse a judge of improper motives in his decisions.
 
 
 45
 3) It is too easy to allege bad faith if judges had only a qualified good faith immunity.
 
 
 46
 4) Faced with the possibility of defending civil actions, judges may not be free to exercise their judgment and may be forced to keep unnecessary voluminous records.
 
 
 47
 5) Other procedural safeguards reduce the need for civil actions against judges.
 
 
 48
 Eades v. Sterlinske, 810 F.2d at 725, paraphrasing Bradley, 13 U.S. (1 Wall.) at 347.
 
 
 49
 A judge will be liable for his actions only when they were taken in the "clear absence of all jurisdiction" or taken in excess of jurisdiction. Bradley, 13 U.S. (1 Wall.) at 351. Therefore, the crucial question is whether the judge's acts were judicial acts. Stump, 435 U.S. at 348. In Stump, the Supreme Court stated that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S. at 362.
 
 
 50
 The specific act that plaintiffs attribute to Brennan is the signing of a search warrant. The specific acts attributed to Vocke are issuing and entering various orders, an opinion, and a judgment. Further, plaintiffs attribute other general acts of conspiracy to these two defendants.
 
 
 51
 Wisconsin law vests in these two defendants as judges, the jurisdictional authority to perform the specific acts which plaintiffs attribute to them in their amended complaint. Therefore, the first part of the Stump test is satisfied. Further, plaintiffs were dealing with Brennan and Vocke in their judicial capacities and, thus, the second part of the Stump test is satisfied. The Court finds that defendants Vocke and Brennan are immune from liability for civil damages in this action and, accordingly, their motions to dismiss will be granted.
 
 
 52
 B. Defendant Nagy's Motion for Summary Judgment.
 
 
 53
 The amended complaint's only allegations pertaining to defendant Nagy are set forth in Count I. This count alleges that Nagy participated in a conspiracy to falsely prepare an affidavit alleging unlawful activity by Thomas Stockheimer. Plaintiffs allege that this affidavit served as a basis for the issuance of a search warrant by Judge Brennan. Based on these factual allegations, plaintiffs contend that defendant Nagy committed criminal trespass and illegally confiscated property. Additionally, the plaintiffs allege that in executing this search warrant Nagy was involved in an assault and battery upon plaintiff Kathryn Stockheimer. Plaintiffs seek to recover monetary damages pursuant to these Count I allegations.
 
 
 54
 Nagy moves the Court for summary judgment arguing that he is absolutely immune form civil damages based on the doctrine of quasi-judicial immunity or, in the alternative, that the doctrine of qualified immunity cloaks him from civil liability since he acted in good faith and with a reasonable belief in the validity of the search warrant.
 
 
 55
 To prevail on a motion for summary judgment, the moving party must show the absence of a genuine issue of material fact, viewing all factual inferences in the light most favorable to the non-moving party. Adickes v. S.H. Kress and Company, 398 U.S. 144 (1970).
 
 
 56
 Here, plaintiffs have not submitted any briefs or affidavits in response to Nagy's motion for summary judgment. Rule 56(e) of the Federal Rules of Civil Procedure "require[s] a party opposing a motion for summary judgment, supported by affidavits, to produce enough evidentiary matter to establish a genuine issue for trial for the 'very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Markwell v. General Tire And Rubber Company, 367 F.2d 748, 750 (7th Cir.1966) quoting 6 Moore's Federal Practice (2d ed.) p 56.01(14). Since plaintiffs have not responded to defendant Nagy's summary judgment motion, this motion must be resolved on the basis of the pleadings and defendant Nagy's evidentiary submissions filed in support of his motion. See Young v. South Side Packing Company, 369 F.Supp. 59, 60 (E.D.Wis.1973).
 
 
 57
 In executing the search warrant, defendant Nagy, then a Clark County deputy sheriff, was acting pursuant to a Wisconsin circuit court order. Inasmuch as plaintiffs are alleging that defendant Nagy, in his individual capacity, trespassed and illegally confiscated property while obeying a court order, defendant Nagy is absolutely immune from liability on civil damages. "Nonjudicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct." Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir.1986) (holding that the enforcement of a court-ordered judgment is intimately related with the judicial process, and a person obeying that court order has quasi-judicial or absolute immunity for his acts as directed by the court).
 
 
 58
 Regarding that aspect of plaintiffs' allegations pertaining to Nagy's participation in a conspiracy to prepare a false affidavit, the Court finds that Nagy is immune from civil liability for these alleged acts. In Malley v. Briggs, --- U.S. ----, 106 S.Ct. 1092, 1097 (1986), the United States Supreme Court recently announced that a law enforcement officer is entitled to qualified immunity from liability for damages under Sec. 1983 for his conduct in applying for an arrest warrant by presenting a complaint and an affidavit. The Supreme Court stated that in determining whether a law enforcement officer is afforded the protection of qualified immunity in the warrant application setting, the test is whether a reasonably well-trained officer would have applied for the warrant, with the knowledge that probable cause is required. Malley, 106 S.Ct. at 1098.
 
 
 59
 Wis.Stat. Sec. 968.12(1) requires a showing of probable cause before a search warrant may issue. Probable cause is shown where there are "sufficient facts to excite an honest belief in a reasonable mind that objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." State v. Edwards, 98 Wis.2d 367, 373, 297 N.W.2d 12 (1980). This probable cause showing may be based upon an affidavit whose contents derive from the affiant's "information and belief." Wis.Stat. Sec. 968.12(2).
 
 
 60
 Nagy's affidavit, submitted in conjunction with the search warrant application, identifies two people who observed the commission of a crime and noted the documents used in that crime. The court transcript of the proceedings conducted pursuant to the search warrant application included the testimony of one of these eye witnesses and of Nagy himself. Considering this evidence of probable cause, and recognizing that plaintiffs have not responded to the summary judgment motion, the Court finds that Nagy had a reasonable basis for applying for the subject search warrant. Accordingly, the Court finds that defendant Nagy is immune from liability for damages in this action for his conduct in applying for the search warrant.
 
 III. Request for Injunctive Relief
 
 61
 The plaintiffs request that Judge Vocke's order to remove the various structures from the Life Science Church property be enjoined from enforcement. The record before the Court reveals that Judge Vocke's order was enforced in June of 1985. Consequently, plaintiffs request for injunctive relief is moot and, accordingly, Count II will be dismissed.
 
 IV. Request for Declaratory Relief
 
 62
 Count III of plaintiffs' amended complaint requests a Declaratory Judgment declaring the various aforementioned affidavits, order, and search warrants at issue in this case to be null and void.
 
 
 63
 The purpose of a declaratory judgment is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." Cunningham Brothers, Inc. v. Bail, 407 F.2d 1165, 1167 (7th Cir.1969), cert. denied, 89 S.Ct. 2100 (June 16, 1969). The "declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." 6A Moore's Federal Practice p 57.05 (2d ed. 1986).
 
 
 64
 The items as to which plaintiffs seek declaratory judgment relief (the affidavits, state court orders and search warrants) have already been acted upon or executed. As such, to declare these documents "null and void" would involve adjudicating moot issues. Accordingly, plaintiffs' Count III will be dismissed from this action.
 
 CONCLUSION
 
 65
 For the above reasons, the Court DENIES plaintiffs' motion to reopen discovery; GRANTS Vocke's motion to dismiss; GRANTS defendant Brennan's motion to dismiss; GRANTS defendant Nagy's motion for summary judgment; DISMISSES AS MOOT plaintiffs' request for injunctive relief; and DISMISSES AS MOOT plaintiffs' request for declaratory judgment relief.
 
 
 66
 The defendants remaining in this action are Harold J. Dahl and Alan Thomas Nass. The Court hereby schedules a status conference for 9:00 Tuesday, June 2, 1987 to discuss further proceedings in this matter.
 
 
 67
 SO ORDERED this 18th day of May, 1987 at Milwaukee, Wisconsin.
 
 
 68
 /s/ ROBERT W. WARREN
 
 UNITED STATES DISTRICT JUDGE
 
 69
 Oct. 15, 1987.
 
 DECISION AND ORDER
 
 70
 In a Decision and Order dated May 18, 1987, the Court, inter alia, granted defendant Vocke's motion to dismiss and granted defendant Nagy's motion for summary judgment. Presently pending before the Court is plaintiffs' motion to reinstate these two defendants.
 
 I. Background
 
 71
 Plaintiffs are the Life Science Church and various persons associated with the church. They commenced this civil rights action pursuant to 42 U.S.C. Secs. 1981, 1983, 1985(a) and 1988. Defendants are several federal, state and local officials who allegedly plotted to destroy the Life Science Church and its membership allegedly because some plaintiffs are members of the Posse Comitatus.
 
 
 72
 The facts alleged in plaintiffs' moving papers center around a June 24, 1985, execution by law enforcement officials of a writ of assistance on property of the Life Science Church located in Tigerton, Wisconsin. This writ was based upon a July 10, 1981 judgment in the Shawano County Circuit Court entered by Acting Judge Timothy L. Vocke. The judgment ordered the removal of illegally placed mobile homes, septic systems, and sanitary systems and enjoined any future placement of these items on the property without first obtaining permits.
 
 
 73
 The plaintiffs charge that the law enforcement officials exceeded the scope of authority contained in the writ, damaged the homes and personal property, auctioned off exempt property, cut utility lines, presented no search warrant, restrained church members from interfering, and terrorized church members. The plaintiffs also allege that the writ had previously been complied with and, thus, there was no outstanding writ to execute.
 
 II. Motion To Reinstate Defendant Vocke
 
 74
 In its Decision and Order dated May 18, 1987, the Court held that defendant Vocke was protected by the doctrine of absolute judicial immunity in his issuing of various orders that were the subject of plaintiffs' complaint. In their motion to reinstate, plaintiffs argue that defendant Vocke was not officially a judge when he issued the writ since he had failed to file an oath of office. In response, the Wisconsin Attorney General, on behalf of Vocke, argues that no oath of office needed to be filed when Vocke was serving as reserve judge, and, further, Vocke's oath as a circuit judge carried over to his time as a reserve judge.
 
 
 75
 Chapter 757.02, Wis.Stats., requires every person elected or appointed judge of the circuit court "shall take, subscribe and file" the oath given in that chapter. An oath also is required by section 28 of article IV of the Wisconsin Constitution. An affidavit of defendant Vocke, submitted with the state's brief, avers that he took an oath as a circuit judge on January 2, 1979. He also states that as a circuit judge, he executed and filed an Oath of Office.
 
 
 76
 Vocke became a reserve judge in January of 1983. According to documents filed with the state's brief, it was the policy of Wisconsin Supreme Court Chief Justice Nathan S. Heffernan at that time not to require reserve judges to execute and file a new oath of office. That policy was changed by the Chief Justice, through the Director of the State Courts Office, to require reserve judges to execute an oath as a precondition of office. The change became effective January 1, 1985. The Chief Justice's authority over reserve judges is given by Article VII, section 3(1) and section 24(3) of the Wisconsin Constitution and by Supreme Court Rule 70.01.
 
 
 77
 Thus the issues become (1) whether Vocke's circuit court oath was sufficient for his duties as a reserve judge prior to 1985; and (2) assuming no valid oath, whether Vocke loses his absolute immunity as a result.
 
 
 78
 The oath required by Ch. 757.02 reads as follows:
 
 STATE OF WISCONSIN
 County of ______________
 
 79
 I, the undersigned, who have been elected (or appointed) to the office of ____, but have not yet entered upon the duties thereof, do solemnly swear that I will support the constitution of the United States and the constitution of the state of Wisconsin; that I will administer justice without respect to persons and will faithfully and impartially discharge the duties of said office to the best of my ability. So help me God.
 
 
 80
 ______________ (Signature)
 
 
 81
 Subscribed and sworn to before me this ___ day of ____, 19___
 
 
 82
 ______________ (Signature)
 
 
 83
 Chapter 753.075, Wis.Stats., contains the eligibility provisions for reserve judges. They read:
 
 
 84
 (2) Eligibility. The following persons may serve temporarily on appointment by the chief justice of the supreme court as a reserve judge of the court of appeals or the circuit court for any county:
 
 
 85
 (a) Any person who, as of August 1, 1978, has served a total of 8 or more years as a supreme court justice or circuit judge; or
 
 
 86
 (b) Any person who has served 4 or more years as a judge or justice of any court or courts of record and who was not defeated at the most recent time he or she sought reelection to judicial office.
 
 
 87
 Nowhere do the provisions refer to the oath requirements of Ch. 757.02. They do, however, require a reserve judge to have served as a judge or justice for at least four years. Thus the provisions would seem to assume that eligible judges have already taken and filed an oath of office at least once. On the other hand, the eligibility requirements also would seem to contemplate that eligible reserve judges are not currently serving as circuit judges or in another official capacity. At best, the statutes provide an ambiguity that the Chief Justice wisely corrected in 1985. At worst, this Court is faced with a number of serious questions not addressed by the parties: Does the constitutional authority of the Chief Justice over reserve judges supercede the statutory requirement of the filing of the oath? If no oaths were filed by all reserve judges prior to 1985, do all the rulings of those judges become void? Should public policy dictate otherwise?
 
 
 88
 The Court declines at this time to address these questions simply because it feels the answers would not affect defendant Vocke's absolute immunity. Absolute immunity is based on public policy, not constitutional or statutory provisions. See May 18, 1987 Decision and Order at 8-9. The Court finds that even assuming that reserve judges should have been required to take and file new oaths prior to 1985, defendant Vocke does not lose his absolute immunity. He clearly was following the dictates of the Chief Justice in failing to do so. In all other respects, Vocke was performing a judicial function. Furthermore, in the Decision and Order dated May 18, 1987, the Court specifically held that declaring "null and void" court orders that had already been acted upon or executed would involve adjudicating moot issues. The Court then dismissed plaintiffs' claim for a declaratory judgment that would have voided, among other things, defendant Vocke's writ of assistance. Therefore, the Court hereby DENIES the motion to reinstate him as a defendant.
 
 III. Motion To Reinstate Defendant Nagy
 
 89
 In its May 18, 1987, Decision and Order, the Court granted summary judgment to defendant Nagy, holding that he was subject to qualified immunity in the execution of the writ. Plaintiffs now argue (they originally did not respond to Nagy's summary judgment motion) that since Vocke did not file an oath, the writ was void. Again, the Court finds that the issue of immunity does not turn on the filing of an oath by a reserve judge. Therefore, the Court hereby DENIES the motion to reinstate defendant Nagy.
 
 IV. Further Matters
 
 90
 1. In connection with plaintiffs' motion to reinstate, defendant Vocke, through the Attorney General, has moved for sanctions under Rule 11, Fed.R.Civ.P. In light of the above discussion, the Court finds no merit in the motion.
 
 
 91
 2. Due to conflicts on the Court calendar, the final pretrial conference scheduled for 1:30 p.m., Monday, October 19, 1987 has been rescheduled to Wednesday, December 2, 1987 at 9:30 a.m.. Additionally, the trial of this matter scheduled for Wednesday, October 21, or alternatively, for Monday, November 16, 1987 has been removed form the Court's calendar and will be rescheduled at the final pretrial conference.
 
 
 92
 SO ORDERED this 15th day of October, 1987, at Milwaukee, Wisconsin.
 
 
 93
 /s/ Robert W. Warren
 
 
 94
 /s/ UNITED STATES DISTRICT JUDGE
 
 
 95
 Jan. 17, 1989.
 
 DECISION AND ORDER
 
 96
 Plaintiffs filed this civil rights action under 42 U.S.C. Secs. 1981, 1983, 1985(2), and 1988, alleging that various federal, state, and local officials had plotted to destroy the Life Science Church and its membership allegedly because some plaintiffs are members of the Posse Comitatus. Presently pending before the Court are cross-motions for summary judgment regarding the liability of the only remaining defendants, Harold Daul and Alan Nass.
 
 I. Background
 
 97
 The long history of this case can be gleaned from various orders of this Court and others that are already on file. See, for example, Decision and Order dated May 18, 1987, at pp. 2-4; see also, unpublished Order of the United States Court of Appeals for the Seventh Circuit dated March 27, 1984. The Court held a pretrial conference on December 2, 1987, in order to set the case for trial. Counsel for the parties, however, were unable to agree on the appropriate issues for trial. Counsel agreed to meet in an attempt to prepare an appropriate final pretrial report. But at a conference call held August 19, 1988, the parties informed the Court that they were still unable to agree on the issues to be tried.[1] Cross-motions for summary judgment were suggested and the Court set a briefing schedule.[2] That briefing has not been completed.
 
 
 98
 As the case presently stands, at least from the perspective of the plaintiffs, the only question still in dispute is whether the two remaining defendants had authority to inspect the Life Science Church Bible Camp. See Plaintiffs' Motion for Summary Judgment at 6. Plaintiffs contend that churches and bible camps are exempt from taxation, zoning and health regulations. Id.
 
 
 99
 "If this Court accepts that as the primary issue, then the two remaining defendants were without authority in inspecting the Life Science Church Bible Camp; and all ensuing actions to and including the massive destruction of their property by a huge Swat Team constituted unconstitutional interference by State agents or officials with the Plaintiffs' Right to Freedom of Religion and association and of No Deprivation of Property without Due Process.
 
 
 100
 If the Court were to deny plaintiffs' motion for summary judgment, then the general factual issue for the jury would be: Whether the two remaining defendants conspired between themselves and/or other state and/or federal agents to deprive these plaintiffs of constitutional rights; because they believed some of the members of the Life Science Church to also be members of the Posse Comitatus, which said agents or their superiors are believed to be a dangerous right-wing organization.
 
 
 101
 ... As difficult as it may be to believe, what this Civil Rights case is all about, as quoted above, is that a huge swat team destroyed the Church's mobile home buildings, even those mounted on permanent foundations, wheels removed and septic systems installed, for failure to have permits for septic systems, even though the real estate belonged to the Church, was their religious worship place outside of any town, and was the Church's Bible Camp, not a public Mobile Home Park.
 
 
 102
 Id. at pp. 6-8. Plaintiffs' motion asks that the Court find as a matter of law that the Life Science Church, as a church and bible camp, "was exempt from the laws and regulations used as a basis for its destruction and that, therefore, plaintiffs' constitutional rights have been violated under color of State law by a group of conspirators, any and all of whom are liable for the damages resulting from such deprivation of property without Due Process, and such interference with a church by the State...." Id. at 9. Plaintiffs also request summary judgment on the liability of the defendants Daul and Nass. Id. Plaintiffs' motion cites to factual assertions in the complaint, but contains no other evidentiary basis for their motion.
 
 
 103
 Defendants responded with their own motion for summary judgment.[3] They argue: (1) the assertions by plaintiffs do not state a federal constitutional claim; (2) the defendants were not involved in any of the claimed events, except for those activities for which they have immunity; (3) the defendants are entitled to qualified immunity; and (4) the facts do not support plaintiffs' assertions. See Memorandum in Support of Defendants' Motions for Summary Judgment & In Opposition to Plaintiffs' Motions for Summary Judgment at 4. Accompanying defendants' memorandum were affidavits from both defendants. The affidavits contained the following facts.
 
 
 104
 Defendants Harold Daul and Alan Nass are employees of the State of Wisconsin. During times relevant to this suit, they were employed with the Department of Health and Social Services. Daul was a public sanitation officer and Nass was an on-site waste disposal expert. As part of their duties, both were available for consultation by county and local officials in areas of sanitation.
 
 
 105
 On September 21, 1978, in response to requests from the Shawano County Zoning Administrator, Daul made an inspection of the sewer systems set up by plaintiffs in Fairbanks Township, Shawano County, Wisconsin. On June 21, 1979, Daul served an inspection warrant on the premises and made a complete sanitary survey. Inspections were also made by Daul and Nass in April of 1980. Both concluded that the premises were in violation of Wisconsin statutes relating to sewage and sanitation standards. Daul and Nass testified at a hearing in Shawano County Circuit Court relating to the violations.
 
 
 106
 Both Daul and Nass state that they had no further involvement with plaintiffs' premises, other than in 1984 when Nass reviewed plumbing and sewage plans relating to plaintiffs' property. Both deny entering into any conspricy regarding a deprivation of any of plaintiffs' constitutional rights and both state that they never met with any judge regarding the matters, other than in the course of testifying at a public hearing.
 
 
 107
 Plaintiffs submitted a reply to defendants' motion, but did not contest any of the facts of the affidavits. Plaintiffs argue that a legal issue still remains as to whether the defendants had a right to inspect church property. See Plaintiffs' Reply to Defendants' Memorandum, at 2.
 
 II. Analysis
 
 108
 Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Black v. Henry Pratt Company, 778 F.2d 1278, 1281 (7th Cir.1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. Egger v. Phillips, 710 F.2d 292, 296 (7th Cir.), cert. denied, 464 U.S. 918 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. Reardon v. Wroan, 811 F.2d 1025, 1027 (7th Cir.1987). When the facts are disputed, the parties must produce proper documentary evidence to support their contentions and may not rest on mere allegations in the pleadings or upon conclusory statements in affidavits. Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1988).
 
 
 109
 Title 42, United States Code, section 1983, provides a cause of action for deprivation of constitutional rights under color of state law. In Papapetropoulous v. Milwaukee Transport Services, 795 F.2d 591, 594-95, the United States Court of Appeals for the Seventh Circuit explained that the initial inquiry under section 1983 is whether two essential elements are present: (1) whether the conduct was committed under color of state law; and (2) whether this conduct deprived a person of rights, privileges and immunities secured by the Constitution or law of the United States. The appellate court went on to explain that a further element necessary for a proper cause of action is that a causal connection must exist between the defendant's actions and the injury resulting from the constitutional deprivation:
 
 
 110
 "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional deprivation."
 
 
 111
 795 F.2d at 595 (quoting Wolf-Lille v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983)).
 
 
 112
 The cross-motions for summary judgment first present the issue of whether defendants' sanitation inspection of plaintiffs' church and bible camp, by itself, was a deprivation of plaintiffs' constitutional rights. The Court finds no merit in this bald contention. The mere fact that a church or religion is subject to some state regulation is not by itself a constitutional deprivation. See United States v. Lee, 455 U.S. 252, 257 (1982) (not all burdens on religion are unconstitutional). Furthermore, plaintiffs present no legal or factual basis for a finding that the inspection by defendants unduely burdened or infringed plaintiffs' rights. See excerpt of Plaintiffs' Motion for Summary Judgment, supra.
 
 
 113
 Remaining, then, is the issue of whether defendants used their lawful authority in a conspiracy to deprive plaintiffs of their civil rights. The Court finds this position meritless as well. The affidavits of defendants establish that in inspecting plaintiffs' premises, defendants performed their duties in a good-faith manner. Plaintiffs offer no factual rebuttal to these affidavits. In particular, plaintiffs present no evidence of a conspiracy or defendants involvement in one. The allegations of the first amended complaint do not suffice at this stage of the proceedings.
 
 III. Summary
 
 114
 Accordingly, based on the decision above, the Court finds no legal or factual basis for holding defendants Daul or Nass liable for the injuries alleged by plaintiffs. Plaintiffs' motion for summary judgment is hereby DENIED and defendants' motion for summary judgment is hereby GRANTED. Plaintiffs' claims against Daul and Nass are hereby DISMISSED with prejudice.
 
 
 115
 Since all defendants have now been dismissed from the case, the Court DIRECTS the Clerk of Court to enter judgment in favor of all defendants.
 
 
 116
 SO ORDERED this 17th day of January, 1989, at Milwaukee, Wisconsin.
 
 
 117
 /s/ ROBERT W. WARREN
 
 
 118
 /s[ ] UNITED STATES DISTRICT JUDGE
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed R.App.P.,; Circuit Rule 34(f). Plaintiff-Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [2]
 Per our order of March 22, 1990, Appellant's motion to file an amendment to their reply brief was to be taken with the case. That motion is hereby granted, and the materials presented by appellants in that amendment have been considered by the panel
 
 
 [3]
 In their brief, the state appellees have asked this court to issue Rule 11 sanctions against appellants for bringing a frivolous action in the district court and continuing it here on appeal. We construe this request as a motion for sanctions, and hereby deny the motion
 
 
 [1]
 The long period of delay between the final pretrial conference and the subsequent conference call was due in part to my unexpected heart surgery
 
 
 [2]
 At the August 19, 1988, conference call, the parties agreed to withdraw any pending motions. At the time, defendants had filed a motion in limine and a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure and plaintiffs had filed a motion for leave to amend the complaint to replace John Doe with Wallace Schardt, Sheriff of Shawano County. As seen by plaintiffs' submissions on the cross-motions for summary judgment, plaintiffs apparently do not feel that the addition of Sheriff Schardt is necessary for a final resolution of this case
 
 
 [3]
 Defendants' memorandum contains a request for Rule 11 sanctions on the cross-motions for summary judgment. The Court hereby DENIES that motion. The lack of factual merit to plaintiffs' claim did not become apparent until defendants filed their affidavits and plaintiffs were unable to respond. The Court does not understand why defendants waited until after the final pretrial conference to challenge plaintiffs' factual allegations