**UNION MECHLING CORPORATION,**
Plaintiff-Appellee,

v.

**Nathan CARMADELLE,**
Defendant-Appellant.

No. 79–3618
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1980.

Greenberg & Dallam, Nathan Greenberg, Gretna, La., for defendant-appellant.

Lemle, Kelleher, Kohlmeyer & Matthews, William R. Forrester, Jr., New Orleans, La., for plaintiff-appellee.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

The only issue on this appeal is whether the district court abused its discretion when it denied defendant's motion for a new trial based on newly discovered evidence. That motion contained a request that the case be re-opened to permit the introduction of testimony concerning the post-trial issuance to defendant of a barge fleeting permit. The defendant's motion for a new trial was made pursuant to Rule 59 of the Federal Rules of Civil Procedure, and it was filed in the district court on August 20, 1979, approximately one week before the district judge entered his final amended findings of fact and conclusions of law in this civil case.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Final judgment based on those findings and conclusions was entered in favor of plaintiff on September 28, 1979. The motion for a new trial was thereafter denied on October 17, 1979. Since this Court finds that the district court was well within its discretionary authority when it denied the motion, the final judgment in favor of plaintiff is affirmed.

In June 1976, Union Mechling Corporation initiated this action to declare terminated certain subleases of Mississippi River frontage as of January 14, 1976. These subleases were executed by Mechling and defendant Nathan Carmadelle in June and August 1974. Mechling also sued for the return of all rentals made to defendant Carmadelle under the terms of the subleases.

Carmadelle was a real estate broker. In early 1974, he and Mechling had orally negotiated for the sublease of approximately 4,800 feet of river frontage. Mechling desired the river frontage so that it could set up its own barge fleeting operations on the Mississippi River. The trial record indicates that there was a shortage of fleeting space in early 1974 and that Mechling intended to fleet 88 barges on the entire 4,800 feet.

Pursuant to their oral agreement, Carmadelle acquired the property under three separate leases from three different lessors. Thereafter, he subleased the property to Mechling in three separate subleases. Each lease and relevant sublease covered only one tract of land along the river. The three leased tracts together provided Mechling the desired 4,800 feet of riparian rights along the west bank of the Mississippi River in an area just below the Huey P. Long Bridge. The largest of the three tracts supplied around 3,400 feet of river frontage and was the tract located closest to the bridge. The other tracts provided for approximately 483 feet and 900 feet of river frontage.

The subleases which were prepared by Carmadelle's attorney are not identical, but all three subleases obligated Mechling to make a reasonable, diligent effort to obtain any necessary permits and authorizations

for its proposed fleeting operations. All three subleases also provided that Mechling had the right to terminate the subleases if for reasons beyond its control, governmental action prevented it from establishing the proposed fleeting operations on the subleased tracts.

Carmadelle has consistently defended against Mechling's declaratory action by arguing that Mechling did not make a reasonably diligent effort to obtain the necessary permits, in particular, a barge fleeting permit from the United States Corps of Engineers. By August 1974, Mechling had filed an amended application with the Corps of Engineers for a permit to conduct fleeting operations on the entire 4,800 feet of river frontage. Various parties, including the New Orleans Steamship Pilots Association and the United States Coast Guard, interposed objections to the permit because of the proximity of the proposed fleeting operations to the Huey P. Long Bridge and the foreseeable hazards to navigational activities. After months of attempted compromises and negotiations, the Corps of Engineers denied the permit on January 8, 1976 and notified Mechling on January 14, 1976 of its decision. During its negotiations with the Corps of Engineers, Mechling did not once request that its amended application be modified to allow the Corps of Engineers to grant a permit for less than the entire 4,800 feet. Mechling also never sought a separate permit from the Corps for each individual tract. Nothing in the subleases, however, required Mechling to seek separate permits or to request a permit for only a substantial portion of the entire 4,800 acres. In fact, Carmadelle stipulated at trial that he entered into an agreement with Mechling for the lease of the entire 4,800 feet. Moreover, he testified at trial that he knew from the very beginning of his negotiations with Mechling that Mechling desired all 4,800 feet for its barge fleeting operations.

This case is now before this Court for the third time. Judgment was first entered in favor of Mechling in October 1977 after a bench trial before the court on June 17,

1977. Carmadelle then filed a motion and an amended motion for a new trial based on newly discovered evidence. His motions were denied after hearing in December 1977. Appeal was timely, but the first appeal was dismissed as premature in 1978.

The second appeal to this Court ended in an order dated April 24, 1979 that remanded the case back to the district court for entry of appropriate findings and conclusions in compliance with Rule 52 of the Federal Rules of Civil Procedure. After remand, the district court entered its findings and conclusions on August 10, 1979, and thereafter, its final amended findings and conclusions on August 27, 1979. As noted above, final judgment was again entered in favor of Mechling on September 28, 1979.

Prior to entry of the required findings and conclusions in August 1979, Carmadelle filed a motion to re-open the testimony to permit proof of a barge fleeting permit that was issued to him by the Corps of Engineers in November 1977 and subsequently modified by the Corps in May 1978. He applied for the permit in April 1977. The permit that was issued to Carmadelle authorized him to operate a barge fleeting business on approximately 2,900 feet of the 4,800 feet that had been subleased to Mechling. Carmadelle's application did not seek a permit on each separate lease, but instead requested a permit on a substantial portion, sixty percent of the original 4,800 feet. The permit eventually granted to him by the Corps did not cover the 1,900 feet closest to the Huey P. Long Bridge. Instead, the permit required that all moored barges were "to remain below mile 105.5 right descending bank above the Head of Passes or at least 2,760 feet below" the bridge. After hearing on the motion, the district judge denied Carmadelle's request to re-open the case on July 25, 1979.

After entry of the district judge's initial findings and conclusions, Carmadelle again tried to get into evidence proof of his permit for fleeting operations on the 2,900 feet. He did so by filing on August 20, 1979, a motion for a new trial on the basis of newly discovered evidence and by requesting therein the re-opening of the trial for further testimony. The newly discovered evidence mentioned in his motion relates only to the permit issued to him post-trial and to its ostensible evidentiary support of his defense that Mechling did not comply with its due diligence obligations under the subleases. Carmadelle's earlier motion for a new trial based on newly discovered evidence, the one that was denied in December 1977 prior to the first appeal to this Court in 1978, also only concerned the post-trial issuance of the permit for 2,900 feet.

A hearing was then scheduled and held on Carmadelle's 1979 motion for a new trial. As mentioned above, this motion was denied and an order to that effect entered by the district court on October 17, 1979. Appeal was again timely.

■ Rule 59 of the Federal Rules of Civil Procedure governs motions for a new trial. The denial of a motion for a new trial based on newly discovered evidence brought pursuant to Rule 59 is appealable. The scope of review on appeal of such an order is limited, and this Court applies the same clearly erroneous standard that is generally applied to the usual fact findings by the trial court. In fact,

> It has been uniformly held that according to Rule 59 of Civil Procedure, 28 U.S. C.A., a motion for new trial is addressed to the sound discretion of the trial judge, and will not be disturbed except for a clear abuse of that discretion. Such a motion grounded upon newly discovered evidence will not be granted unless (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching. . . .

[and]

> it is in the absence of a clear abuse of discretion for the trial judge and not the appellate judges to say whether the case is one for setting aside the verdict, and the district judge should not set aside a

verdict on such a motion unless it appears to him that the tendered evidence is of such a nature that if offered on a new trial, it would probably change the outcome.

*La Fever, Inc. v. All-Star Insurance Corporation,* 571 F.2d 1367, 1368 (5th Cir. 1978) (citations omitted); *see Sulmeyer v. Coca Cola Co.,* 515 F.2d 835, 852 (5th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976); *see also Del Rio Distributing, Inc. v. Adolph Coors Co.,* 589 F.2d 176, 178–79 (5th Cir. 1979) (denial of a motion for new trial based on changes in the law reversible on appeal only for prejudicial error or manifest injustice).

The overwhelming and uncontradicted evidence at the bench trial in June 1977 supports the district court's findings and conclusions that were entered in August 1979. In those findings and conclusions, the district court held that Carmadelle understood at all times that Mechling intended to request a permit for the entire 4,800 feet and that it desired the whole area of each tract for its barge fleeting operations despite the fact that each of the three tracts were separately leased and subleased. Carmadelle's testimony and stipulations at trial were to this effect. His testimony was corroborated by that of Mechling's operations manager and by a letter between the parties dated April 11, 1974, which indicated that an oral agreement existed between them to lease all 4,800 feet of river frontage. At the time of that letter, Carmadelle had not yet obtained leases for the properties, but he had assured although not guaranteed Mechling that he could do so.

The evidence submitted at trial also reveals that the district court correctly found that Carmadelle and Mechling actively pursued and negotiated for a permit on the entire 4,800 feet up until the Corps of Engineers denied Mechling's application for a permit in January 1976. The mere fact that Mechling's initial application for a barge fleeting permit only included 3,400 feet is not dispositive. Mechling's initial application only covered 3,400 feet because Carmadelle had not yet acquired the remainder of the property under lease. The testimony at trial clearly shows that the application was amended by agreement between Mechling and Carmadelle to cover the entire 4,800 feet as soon as Carmadelle obtained the necessary leases of the additional river frontage and he and Mechling executed the ancillary subleases of that frontage.

The trial testimony of Mechling's operations manager and of the president of the New Orleans Steamship Pilots Association, forcefully reveals the substantial efforts made by both Mechling and Carmadelle to resolve the navigational objections to a permit for fleeting operations on the entire 4,800 feet of river frontage. These were to no avail. It was stipulated at trial that Mechling complied with all of the technical procedures and legal requirements of the Corps of Engineers for the barge fleeting permit and that the permit was denied for substantive navigational reasons. The overwhelming evidence at trial indicated that the two major concerns of the New Orleans Steamship Pilots Association, the Coast Guard, and the Corps of Engineers were the proposed fleeting operations' effect on the usual traffic pattern in that area of the river and the accompanying potential hazards to the anchor piles of the Huey P. Long Bridge. Even the engineer for the Corps of Engineers who worked on Carmadelle's 1977 application for a permit testified that he would have recommended that a permit not be issued for fleeting operations in an area close to the bridge.

■ Because the evidence in the record supports the district court's decision that Mechling made reasonably diligent efforts to acquire a permit on the entire 4,800 feet, this Court cannot say that the district court abused its discretion in denying Carmadelle's motion for a new trial and his request to re-open the testimony. The tendered evidence is not of such a nature that "it would probably change the outcome" since the record establishes that Mechling was under no duty to seek a permit on less than the entire 4,800 feet. Thus, the judgment is

AFFIRMED.