NO. 07-04-0357-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 29, 2006
_____

TRIDENT STEEL CORPORATION, APPELLANT

V.

THE WISER OIL COMPANY, APPELLEE
_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 16394; HONORABLE KELLY G. MOORE, JUDGE
_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

**OPINION**

Trident Steel Corporation appeals a judgment in favor of Wiser Oil Company for breach of contract and fraud in connection with the sale of oilfield tubing and casing that failed during use. We modify the trial court's judgment and affirm it as modified.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Factual and Procedural Background

In May 2001 Wiser ordered 890 joints of production tubing from Trident. The order was based on a written quote from Trident for new 2 7/8-inch steel tubing that complied with American Petroleum Institute specification J-55, was electrical resistance welded and "full body normalized[2] after upset." The quote and subsequent invoice also reflected that the tubing was manufactured by the C.A. Conduven steel mill in Venezuela. Wiser ordered an additional 660 joints of tubing meeting the same requirements in July 2001. Trident, located in St. Louis, Missouri, purchased the tubing from Fremak Industries, Inc. and Tradearbed, Inc. It then contracted with Tubular Services, L.P., of Houston, to receive the tubing, upset and thread the ends and perform the normalizing process. On performance of its tasks, Tubular certified the tubing met the API J-55 specification. After delivery in Odessa, Wiser hired ICO Worldwide Inc., also of Odessa, to coat the inside of the tubing.

During the summer of 2001 Wiser installed tubing from Trident and other sources in several wells in its Wellman unit in Terry County. Failure of a submersible pump in one well, the no. 2-1 well, in early October required pulling the tubing and pump. During that operation some of the joints obtained from Trident became crimped. When the entire string was removed Wiser found some 76 of 220 joints from Trident had suffered crimping or were bent. None of the 35 joints in the string manufactured by Hyundai were crimped or bent.

---

[2] Normalizing is a heat-treating process used to strengthen the steel by making its internal structure more uniform.

In November 2001, Wiser experienced similar problems on another well where it had used Trident tubing, the Wellman 5-5. Testimony indicated that 67 of approximately 250 joints of tubing later pulled from the 5-5 well were visibly bent.

When Wiser later pulled the tubing from a third Wellman well, it found 64 joints of bent tubing. Wiser's production foreman on the Wellman unit testified that during the previous two-and-a-half years the company had pulled some twenty thousand joints of tubing acquired from parties other than Trident and none suffered crimping or bending. Wiser notified Trident of the problems on the Wellman 2-1 the day after pulling the tubing and submitted two samples to Tubular for testing.

In December 2001, Wiser ordered 1500 feet of 9 5/8-inch casing from Trident. The contract required the casing to comply with the J-55 specification and be manufactured by Conduven. The casing was delivered to a Wiser well then being drilled in Lavaca County, where all but a few feet shortly was installed as surface casing. Wiser resumed drilling, but within three days after installation of the surface casing, the drill string became hung in the casing at a depth of 300 feet. After the crew managed to remove the drill string, downhole measurements were performed, revealing that four joints of the casing had partially collapsed and were no longer round. Wiser abandoned the well, moved the drilling rig to the side and drilled a new well. Wiser did not pay the invoice for the casing.

An analysis of the damaged Wellman 2-1 tubing performed by Wiser's expert revealed yield strength significantly below that required by the API specification.[3] In May 2002 Wiser filed suit against Trident and Tubular, asserting claims for breach of contract, breach of warranties, strict liability, negligence and negligent misrepresentation. Trident joined Fremak Industries, Inc., Tradearbed, Inc., and Conduven as third party defendants.[4] Trident's pleadings alleged it purchased the tubing and casing from Fremak and Tradearbed, who had purchased it from Conduven. It also asserted a counterclaim against Wiser for payment for the casing.

The trial court granted summary judgment in favor of Fremak and Tradearbed. Through discovery, Wiser learned some of the tubing Trident supplied was manufactured by steel mills in Romania (Silcotube) and Argentina (Acindar) rather than Conduven. By amended petitions Wiser added a claim for fraud and sought exemplary damages, and added a claim for conspiracy between Trident and Tubular.

At the nine-day jury trial, Wiser's experts attributed the crimps and bends in the tubing and the collapse of the casing to defects in the steel and to improper performance of the normalizing process. At the trial's conclusion, the jury charge first presented

---

[3] Tests performed by other consultants reached different conclusions. An early letter from Tubular to Trident stated the tubing met the J-55 requirements and the crimping was the result of "a material handling problem."

[4] An affidavit from one of Trident's attorneys recites it never obtained service of process on Conduven. The failure to obtain service of process on a defendant is treated as a nonsuit as to that party for purposes of determining whether the challenged judgment disposed of all parties and issues. *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962).

questions on each of Wiser's claims concerning the tubing–breach of contract, fraud, conspiracy, breach of warranty and strict liability.  A second group of questions addressed Wiser's casing claims–breach of contract, breach of warranty, strict liability and negligence. The jury found there was no conspiracy between Trident and Tubular.  The jury's answers supported all of Wiser's other claims against Trident, but none against Tubular.  It found Wiser's reasonable attorney's fees through trial were $357,322 and  awarded exemplary damages on the fraud claim of one dollar.

Wiser elected to recover on its breach of contract and fraud claims.  The trial court rendered judgment that Wiser recover from Trident damages of $1,046,199, together with pre and post judgment interest.  It ordered Wiser take nothing against Tubular Services, L.P.[5] and Trident take nothing against Wiser.  A judgment nunc pro tunc added the dates for calculation of prejudgment interest.

## Issues on Appeal

Trident now presents sixteen issues on appeal.   Those issues fall into six areas: whether the law and facts support Wiser's claims for breach of contract (issues 2, 3, 10); if not, did the election to recover for breach of contract estop Wiser from recovery on other theories (issue 1); whether the evidence supports claims for breach of warranty (issues  4, 5, 6, 7); and whether Wiser can recover on its fraud claim and recover exemplary damages (issues 8, 9, 11, 12).  The final issue in Trident's original brief concerns the trial court's

---

[5] Tubular Services, L.P., and Fremak Industries, Inc. filed briefs generally urging affirmance of the trial court's judgment.

failure to render judgment for Trident on its counterclaim for payment on the casing contract. Three issues raised in a supplemental brief challenge the judgment nunc pro tunc. We address Trident's issues in these groupings.

Breach of Contract

By its second and third issues, Trident contends that Wiser's claims based on defects in the tubing and casing lay in breach of warranty rather than breach of contract.

The parties agree the transactions at issue are governed by articles one and two of the Texas version of the Uniform Commercial Code. Tex. Bus. & Com. Code Ann. §§ 1.101 - 2.725 (Vernon 1994 & Supp. 2005).[6] The code displaces common law rules regarding breach of contracts within its scope. *Glenn Thurman, Inc. v. Moore Const., Inc.*, 942 S.W.2d 768, 771 (Tex.App.–Tyler 1997, no writ).

Trident first argues that undisputed evidence it delivered goods under the contracts precludes Wiser's breach of contract claims as a matter of law. Trident contends the facts of this case fit squarely within a holding it finds in *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572 (Tex. 1991), that there can be no breach of contract when a seller delivers

---

[6] We note the invoices from Trident recite the agreements are governed by the law of Missouri. The parties do not address this choice of law provision. Without evidence of Missouri law we are permitted to assume it is the same as Texas law. *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 378 (Tex.App.–Fort Worth 2003, pet. denied). Missouri, of course, like Texas, has adopted the Uniform Commercial Code. *See* Mo. Rev. Stat. §§ 400.1-101 - 400.10-102 (2006). Unless otherwise noted, subsequent section references in this opinion are to the Business and Commerce Code.

a product, even if the product is defective.  We do not agree the court made the holding asserted by Trident.

In *Southwestern Bell*, FDP contracted with Southwestern Bell for two listings and an advertisement panel in its telephone directory.  Southwestern Bell expressly warranted the advertisement would be published correctly.  *Id.* at 573.  When the panel was not printed, FDP sued for negligence and violation of the Deceptive Trade Practices Act based on breach of the warranty against errors.  *Id.* at 574.  Southwestern Bell argued FDP's exclusive remedy was for breach of contract, not breach of warranty.  The supreme court noted the UCC did not strictly apply to the service contract at issue, but because the UCC was based on common law principles, reference to the code was "instructive." *Id.* at 575.

En route to its holding there was some evidence supporting the jury finding the defective performance was a breach of the warranty to publish the advertising correctly, the court made the following statement:

> The UCC recognizes that breach of contract and breach of warranty are not the same cause of action.  The remedies for breach of contract are set forth in section 2.711, and are available to a buyer "[w]here the seller fails to make delivery."  Tex. Bus. & Com. Code § 2.711(a).  The remedies for breach of warranty, however, are set forth in section 2.714, and are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner.

811 S.W.2d at 576.  In its reference to section 2.711(a), the court quoted only a portion of the section.  The full clause of the statute provides that remedies under section 2.711 are available, "Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance[.]" Tex. Bus. & Com. Code Ann. § 2.711(a)

7

(Vernon 1994). The court apparently omitted the reference to rejection or revocation of acceptance because it found FDP did not have the option to accept or reject Southwestern Bell's performance of the contract for services when the annual directory had already been published. *Id.* at 576. Unlike the buyer in *Southwestern Bell*, the nature of the transaction in this case did not preclude Wiser from rejecting the goods or revoking acceptance of them.

Trident's reading of *Southwestern Bell* is contrary to the manner in which it has been applied in subsequent cases governed by the UCC. In *Paul Mueller Co. v. Alcon Laboratories Inc.*, 993 S.W.2d 851 (Tex.App.–Fort Worth 1999, no pet.), the buyer of stainless steel tanks sued the seller for breach of contract and breach of warranty when the tanks rusted after installation. *Id.* at 853. It was undisputed the seller delivered tanks. The court held the buyer could assert a cause of action for breach of contract where acceptance had been revoked in accordance with section 2.608 of the Business and Commerce Code. *Id.* at 855. In *Toshiba Machine Co. v. SPM Flow Control*, 180 S.W.3d 761 (Tex.App.–Fort Worth 2005, pet. granted, judgm't vacated w.r.m.),[7] the court rejected the same argument Trident makes here, that delivery of a product precludes a breach of contract claim, even if the product is defective. *Id.* at 776. As these cases illustrate, it is the buyer's acceptance or rejection of goods which determines the remedies available to the buyer, not the seller's mere delivery of something. *See Id.* at 771, 776. This view is compelled by the plain

---

[7] In accordance with Rule of Appellate Procedure 56.3 the supreme court vacated the court of appeals judgment without regard to the merits and remanded for implementation of a settlement agreement. This disposition did not vacate or disapprove of the court of appeals opinion. *Houston Cable TV, Inc. v. Inwood West Civic Ass'n*, 860 S.W.2d 72, 73 (Tex. 1993); Tex. R. App. P. 56.3.

language of section 2.711(a).  *See also Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1374 (5th Cir. 1987) (noting under UCC remedies distinguished based on "delivery and acceptance" of goods); Gary D. Spivey, Annotation, *Measure and Elements of Buyer's Recovery Upon Revocation of Acceptance of Goods Under UCC § 2-608(1)*, 65 A.L.R.3rd 388 (1975).[8]

Trident also contends Wiser's conduct in paying for the tubing and installing both the tubing and casing was a final acceptance of the goods.  It asserts the judgment on Wiser's breach of contract claim should be reversed and rendered "because the goods were delivered, accepted, paid for and not rejected."[9]

We cannot agree that Wiser accepted the tubing merely by paying for it.  Payment is one circumstance tending to signify acceptance of tendered goods but it neither conclusively establishes acceptance nor precludes revocation of acceptance.  Tex. Bus. & Com. Code Ann. § 2.606 cmt. 3 (Vernon 1994); *see Toshiba Machine*, 180 S.W.3d at 774-75 (jury finding of revocation of acceptance affirmed despite payment).

---

[8] *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894 (Tex.App.–Houston [1st Dist.] 2002, no pet.), contains language that may be read as supportive of Trident's position, but, as the opinion makes clear, no issue of rejection of the rebuilt engine or revocation of its acceptance was raised in that case.  *Id*. at 897.

[9] Trident sometimes states this argument in terms of sufficiency of the evidence supporting the jury's finding.  A legal sufficiency challenge is to be sustained when, inter alia, the evidence conclusively establishes the opposite of a fact vital to a plaintiff's case. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Relying on section 2.606(a)(3),[10] Trident also argues Wiser's use of the goods was an act inconsistent with Trident's ownership and precluded their rejection. We first consider the tubing. Wiser contends that even if it accepted the tubing, the evidence supports a conclusion it revoked its acceptance.[11] We agree. Revocation of acceptance is governed by section 2.608, which Trident does not address. Under (a) of that section a buyer may revoke acceptance of goods whose non-conformity with the contract substantially impairs its value to him if the buyer accepted "(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurance." Section 2.608 recognizes that a buyer may revoke acceptance when use of goods reveals a latent defect. *Paul Mueller Co.*, 993 S.W.2d at 855-56.[12]

---

[10] Section 2.606(a) provides acceptance of goods occurs when the buyer:

(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
(2) fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
(3) does any act inconsistent with the seller's ownership[.]

[11] Revocation of its acceptance of nonconforming goods entitles the buyer to the same remedies as for rejected goods. § 2.608(c).

[12] A buyer's continued use of goods even after notice of nonconformity may not prevent revocation of acceptance if the use was reasonable. *See Toshiba Machine*, 180 S.W.3d at 772-73 (jury finding of revocation upheld where buyer used machines for 17,000 hours over four years while seller made assurances it would cure nonconformity). *See also Deere & Co. v. Johnson*, 271 F.3d 613, 620 (5th Cir. 2001) (applying Mississippi version of UCC).

Wiser contended the tubing did not conform to the contract because it did not meet the API J-55 specification and because some tubing (3/7ths of the total purchased) did not originate at the Conduven steel mill. These defects alleged by Wiser were latent defects. The evidence showed Wiser was not aware of any non-conformity before the tubing was run into the wells. Visual inspection revealed no defects. The evidence also showed that compliance with the J-55 specification is determined through destructive testing,[13] and that only some of the tubing bore any indication of its origin.[14] This evidence established the difficulty of discovering non-conformity. *See* § 2.608(a)(2). Moreover, both the invoices from Trident and attached certificates from Tubular Services were assurances the goods were in conformity with the contracts. The requirements of section 2.608(a) were satisfied.

Section 2.608(b) requires revocation to occur "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. [Revocation] is not effective until the buyer notifies the seller of it." Trident argues that Wiser's use of tubing in the 2-1 well for more than 100 days before it notified Trident of any defect was not notification within a reasonable time. But we find no evidence Wiser discovered, or should have discovered, defects in the tubing before it was pulled from the 2-1 well. It is undisputed that Wiser contacted Trident promptly after it discovered the failure of the tubing

---

[13] In *A.O. Smith Corp v. Elbi S.p.A.*, 56 UCC Rep. Serv. 2d 360, 2005 WL 408145, slip op. at 5 (5th Cir. 2005), the court affirmed a judgment based on a jury finding that post-failure revocation was timely over seller's argument buyer should have performed destructive testing.

[14] Some of the tubing was stamped Venezuela, where the Conduven mill is located.

11

in that well. Trident set up a claim file within a few days of the failure and requested Wiser to send samples of the tubing to Tubular for testing.

With respect to the casing, Wiser contends the evidence supports a finding it rejected the casing. Trident acknowledges that Wiser did not pay Trident's invoice for the casing.

As with the tubing, evidence showed that visual inspection of the casing revealed no defects, and Trident does not contend Wiser had any knowledge of problems with the casing before it was run into the well. Under these circumstances, we cannot agree with Trident's contention that Wiser's placing the casing in the wellbore was an act inconsistent with Trident's ownership that precluded Wiser's rejection of the casing when it learned, a few days later, that it had collapsed. The Texas cases in which a buyer's use of purchased goods has been held to preclude their rejection involve the buyer's use of the goods with knowledge of their nonconforming nature. *See Bacchus Indus. Inc., v. Frontier Mechanical Contractors*, 36 S.W.3d 579 (Tex.App.–El Paso 2000, no pet.); *Explorers Motor Home Corp. v. Aldridge*, 541 S.W.2d 851 (Tex.Civ.App.–Beaumont, 1976, writ ref'd n.r.e.); *Bowen v. Young*, 507 S.W.2d 600 (Tex.Civ.App.–El Paso 1974, no writ); *see also Toshiba*, 180 S.W.3d at 772*; Kuiper v. Wright*, No. 05-99-0689-CV, 2001 WL 923367 (Tex.App.–Dallas, Aug. 16 2001, no pet.) (not designated for publication).[15]

---

[15] One treatise on the Uniform Commercial Code goes so far as to argue that "acts done in ignorance of defects which [the] buyer could not have discovered are never covered by 2-606(1)(c)" (the UCC equivalent of Tex. Bus. & Com. Code § 2.606(a)(3)). J. White & R. Summers, Uniform Commercial Code, § 8-2 (4th ed.).

Trident's other argument in support of its second and third issues is that jury questions 1 and 14 do not support recovery for breach of contract but breach of warranty. Question 1 asked:

> Did Trident Steel Corporation fail to provide the Wiser Oil Company 2-7/8 in diameter, API grade J55, electrical resistance welded (ERW) tubing that had been heat treated to achieve full body normalization and, if so was such failure a producing cause of damages.

Question 14 was substantially similar but addressed the casing. Wiser argues Trident did not preserve the complaint it raises about the questions on appeal. Trident's complaint in its brief focuses on use of the term "producing cause" in the questions. Citing the pattern jury charges, it contends the term "producing cause" may be appropriate in jury questions concerning breach of implied warranty but has no place in a breach of contract question. An objection to a jury charge must point out distinctly the objectionable matter and the grounds of the objection. Tex. R. Civ. P. 274; *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.,* 42 S.W.3d 149, 156 (Tex.App.–Amarillo 2000, no pet.). At trial, Trident objected that no evidence supported the submission of a breach of contract question.[16] We agree the objection did not preserve an appellate contention that the questions were defectively worded.

---

[16] Trident's objection stated: "And the other objection, your Honor, would be to the . . . submission of an issue on breach of contract since it's the issue we believe is one of breach of warranty, which there'd be no evidence to support Question Number 14." In its context, and reading it liberally, we construe the objection as addressing Question 1 also.

We overrule Trident's second and third issues. This disposition also disposes of Trident's tenth issue contending the award of attorney's fees was improper because Wiser had no cause of action for breach of contract. That issue is likewise overruled.

Fraud and Exemplary Damages

We next address Trident's group of issues challenging the findings and judgment on Wiser's fraud claim. Its eighth and ninth issues challenge the sufficiency of the evidence supporting the fraud claim; its eleventh issue challenges the award of exemplary damages and the twelfth issue contends the damages awarded for fraud constituted an impermissible double recovery. We begin with the twelfth issue.

The elements of fraud set out in the jury charge were (1) a material misrepresentation, (2) made with knowledge of its falsity or made recklessly without knowledge of its truth and as a positive assertion, (3) made with the intention it should be acted on by the other party, and (4) the party acted in reliance on the representation and thereby suffered injury. *See Green Int'l. Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (subdividing elements).

The primary misrepresentation Wiser identified concerned Trident's representations the tubing would be manufactured by Conduven. As noted, the evidence showed approximately 3/7ths of the tubing delivered was from steel mills other than Conduven. Trident's president admitted he substituted tubing from the other manufacturers when he did not have sufficient Conduven tubing available. He also admitted Tubular was instructed not to show the source of the tubing on records that would be provided to Wiser. Trident's

14

invoices for the tubing reflected it was manufactured by Conduven. Wiser's brief characterizes the misrepresentations as "in effect, a fraudulent inducement to accept delivery" of the non-conforming tubing.

The damages question for those caused by fraud listed the same damage elements as were listed in the damages question for the breach of contract claim. Those elements were the costs to replace the tubing, new internal coating costs, transportation costs, and installation and other labor costs. Wiser does not contend that the $341,514 damages found by the jury in response to the breach of contract damages question constituted a lesser amount than the total costs it incurred. The $146,682 the jury awarded for fraud damages clearly compensated Wiser for replacing a portion of the tubing for which it was compensated by the breach of contract award. Wiser appears to argue that *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998), authorizes such a duplication of damages. The court in *Formosa Plastics* held that a plaintiff may recover tort damages for fraudulent inducement to enter a contract even when the plaintiff has suffered only an economic loss recoverable under a breach of contract claim. *Id.* at 47. In that case the plaintiff had elected to recover for the tort claim rather than the breach of contract. *Id.* at 44. The court did not hold the plaintiff could recover the same damages under both theories. *Foley v. Parlier*, 68 S.W.3d 870, 885 (Tex.App.–Fort Worth 2002, no pet.). We sustain Trident's twelfth issue. Our disposition of the twelfth issue requires that we sustain Trident's eleventh issue also, and makes consideration of its eighth and ninth issues unnecessary.

15

## Trident's Counterclaim

Trident's thirteenth issue complains of the trial court's failure to render judgment for the unpaid amount on the casing contract and failure to render judgment non-obstante veredicto for its attorney's fees on that contract. It contends the trial court directed a verdict in its favor on its casing contract claim. The reporter's record is not a model of clarity on this question but indicates the trial court denied Trident's motion for directed verdict. The jury charge included a question on Trident's attorney's fees for its contract claim, but no other issues on that claim were submitted or requested.

In a motion for judgment n.o.v. Trident's challenge to the denial of its attorney's fees recited the trial court had granted its motion for directed verdict on its counterclaim. Wiser's response challenged that claim, attaching the relevant portion of the reporter's record, and argued denial of Trident's counterclaim was consistent with the jury's finding that Trident breached the casing contract and its failure to award Trident attorney's fees. The final judgment denied any recovery on Trident's counterclaim.

Trident reasserted its claim the judge had granted a directed verdict in a post-trial motion to modify the judgment and in a separate letter to the trial judge. The court again rejected Trident's argument and denied its motion to modify the judgment. The parties' differing interpretations of the judge's ruling was developed before the trial court. Trident continues on appeal to insist the trial court granted its motion for directed verdict, but does so without citation to the record or discussion of the trial court's repeated rejection of that position. Because the record does not reflect Trident was a prevailing party on its

16

counterclaim for breach of contract, it was not entitled to recovery of attorney's fees. *Green Int'l*, 951 S.W.2d at 390. We overrule Trident's thirteenth issue.

Judgment Nunc Pro Tunc

Trident presents three additional issues in a supplemental brief that challenge the trial court's rendition of a judgment nunc pro tunc. The original judgment provided Wiser was to recover prejudgment interest at the rate of 5 percent per annum but did not state the starting or ending dates for that interest. Wiser filed a motion for judgment nunc pro tunc eight months later noting the omission and requesting the judgment be corrected to reflect the party's agreement that May 17, 2002, the date Wiser filed suit, was the correct date for accrual of prejudgment interest. The trial court granted the motion and signed a judgment that included the beginning and ending dates for accrual of prejudgment interest.

Relying on *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56 (Tex. 1970) (orig. proceeding), Trident argues the omission of prejudgment interest is a judicial error rather than a clerical error subject to correction by judgment nunc pro tunc. In *Comet Aluminum* the supreme court held the removal of prejudgment interest previously awarded was not a clerical error. *Id.* at 59. Here, the trial court's original judgment included, in a paragraph totaling the recovery awarded Wiser against Trident, the language, "Plaintiff recover from Defendant, pre-judgment interest at the rate of five percent (5%) per annum ($134.27 per day) on the sum of [the total judgment]." In the face of that language, we must reject Trident's position the trial court's original judgment did not include prejudgment interest. The judgment nunc pro tunc did not alter the original judgment, but clarified it. *See Mathes*

17

*v. Kelton*, 569 S.W.2d 876, 878 (Tex. 1978); *cf. In re D.D.M.*, 116 S.W.3d 224, 231 (Tex.App.–Tyler 2003, no pet.) (judgment nunc pro tunc could not be used to change date in original judgment).  We overrule Trident's supplemental issues.

## Conclusion

Our disposition of the issues discussed makes unnecessary our consideration of Trident's first, fourth, fifth, sixth and seventh issues.  Sustention of Trident's eleventh and twelfth issues requires modification of the trial court's judgment to delete Wiser's recovery for fraud and related exemplary damages ($146,683).  Accordingly, we modify the trial court's judgment to provide Wiser shall recover the sum of $899,516, and prejudgment interest of $79,583.65 calculated at five percent per annum ($114.18 per day) on the sum of $833,516 from May 17, 2002, through April 13, 2004.  The judgment of the trial court, as modified herein, is affirmed.


James T. Campbell
Justice