# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 16, 2014

Lyle W. Cayce
Clerk

No. 11-20723

VEMEX TRADING CORPORATION,

> Plaintiff-Appellee/Cross-Appellant,

v.

TECHNOLOGY VENTURES, INC.,

> Defendant-Appellant/Cross-Appellee,

Appeals from the United States  District Court
for the Southern District of Texas
USDC No. 4:08-CV-3791

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.[*]

PER CURIAM:[**]

This appeal arises from a contract dispute between Vemex Trading Corporation ("Vemex") and Technology Ventures, Inc. ("TVI") relating to the construction and sale of a coiled tubing unit (the "Equipment") for use in arctic drilling operations.  Vemex, the buyer, sued TVI, the manufacturer and seller,

---

[*] Judge Haynes concurs in judgment only, except as to Section V in which she concurs in full.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20723

alleging that TVI delivered defective Equipment and failed to put the Equipment into working operation at the drilling site in Siberia.  After a bench trial before Judge Gilmore (the "trial judge"), the court found that TVI breached the contract and awarded $564,200 in damages.  Both parties appeal.

## I.

On March 18, 2004, Vemex and TVI entered into Contract No. 11351 (the "Contract").  Section 1, which sets forth the "Subject of the Contract," identifies two areas of performance for TVI.  The first was to sell Vemex "one New Three Piece Design Coiled Tubing Unit High Capacity including Crane for Arctic conditions . . . and spare parts."  The second area of performance, which the Contract defines as "Supervision," was to "fulfill supervision of putting the Goods into operation . . . in Russia."  Section 2 specifies the amounts Vemex was to pay TVI: $564,200.00 for the Equipment and $19,600.00 for the Supervision.  At the time that the parties entered into the Contract, Vemex had already "pre-sold" the Equipment to a company called Rustek for $729,750.00.  Rustek, in turn, had already sold the Equipment to a company called Vend 2000 ("Vend").

On August 31, 2004, TVI delivered the Equipment to the Port of Houston for shipment to Russia.  A number of difficulties arose with the Equipment once it arrived in Russia, although the parties dispute the causes and severity of the problems.  Beginning in early 2005, representatives from TVI traveled to Siberia to fulfill the Supervision duties set forth in the Contract.  The parties continued to encounter difficulties with the Equipment, and TVI ceased its Supervision efforts in August or September of 2005.  TVI claims that its representatives made the Equipment operational before they left, while Vemex asserts that the Equipment never became operational.  Vemex claims that it made a request to TVI to return the Equipment for a full refund; TVI denies that Vemex ever made such a request.  Rustek refused to accept the Equipment from Vemex or pay the purchase price.

No. 11-20723

## II.

On December 31, 2008, Vemex filed suit against TVI, asserting claims based on breach of contract, breach of express warranty, fraud, and unjust enrichment. In an April 19, 2011 order (the "Summary Judgement Order"), which was subsequently modified on May 16, 2011, the trial judge ruled on a number of the issues disputed by the parties. The court held that Vemex's unjust enrichment, fraud, and breach of warranty claims were all barred by the statutes of limitations. Vemex does not contest the trial judge's holding that it failed to bring its unjust enrichment claim within the two-year statute of limitations, but appeals the court's holding that its fraud and breach of warranty claims were barred. With respect to Vemex's breach of contract claim, the trial judge allowed the claim to go forward on the theory that, because the contract required TVI to both manufacture and install the Equipment, it might not have breached the contract until sometime between January and September of 2005, when it attempted to fulfill its Supervision obligations.

The trial judge held a bench trial from May 16, 2011 to May 19, 2011. On July 27, 2011, the trial judge issued her Findings of Fact and Conclusions of Law (the "Order"). Relevant to the instant appeal, the trial judge found the following facts:

- The Contract provided for separate payment amounts for the Equipment ($564,200.00) and TVI's Supervision services ($19,600.00). While Vemex paid the $562,200.00 to TVI in two payments of $120,00.00 and one payment of $324,200.00, it did not pay the $19,600.00 for the Supervision services. When TVI delivered the Equipment to the Port of Houston for shipment to Russia on August 31, 2004, the Equipment was "defective due to missing parts, poor quality parts, and parts that were not suitable for use in arctic conditions."

3

- Beginning in 2005, TVI spent several months supervising the installation of the Equipment in Siberia. During the installation process, Vemex discovered defects in the Equipment and notified TVI of the defects orally and in writing. TVI assured Vemex that it could cure the defects. Despite the defects, it was possible for TVI "to make the Equipment operational during the installation period." TVI ceased its installation efforts in September of 2005, without making the Equipment operational. The reason the Equipment never became operational was that TVI's "employees lacked the knowledge and skills to cure the Equipment's defects."

- In the fall of 2005, Valentin Zhevlakov, the corporate representative of Vemex, spoke to Evgheniya Pashkevich, the director of TVI's Moscow office, and asked to return the Equipment for a refund. Pashkevich refused.

- The Equipment never became operational.

Based on these facts, the court found that Vemex's breach of contract claim accrued in September 2005, when TVI "ended its attempts to cure the defects in the Equipment while the Equipment was being installed." Accordingly, it held that Vemex brought its breach of contract claim within the four-year statute of limitations. The court found that TVI "breached the Contract with [Vemex] by tendering defective Equipment and failing to cure the Equipment's defects during installation of the Equipment." The court further found that although Vemex had initially accepted the Equipment, it had only done so on the reasonable assumption that TVI would cure the defects in the Equipment. The court also found that, after TVI ceased its efforts to fix the defects in the Equipment during the installation process, Vemex revoked its acceptance of the Equipment pursuant to Texas Business and Commercial Code § 2.608.

The court also found that although Vemex requested payment from Rustek, the company to which it had pre-sold the Equipment, Rustek never paid

No. 11-20723

Vemex. Pursuant to Texas Business and Commercial Code § 2.711(a), which provides that a buyer who has justifiably revoked acceptance of goods may recover "so much of the price as has been paid," the court awarded Vemex $564,200.00 in damages, the amount Vemex had paid to TVI under the Contract. The court refused Vemex's request for an award of $729,750.00, the amount Rustek had agreed to pay Vemex, because Vemex had "not provided any evidence showing that $729,750.00 rather than $583,800.00 [the amount Vemex paid for the Equipment plus the $19,600.00 it did not pay for the Supervision] or some other price reflected the market price at the time that the buyer learned of the breach in September 2005."

TVI appeals the trial judge's finding that it breached the contract and the trial judge's damages award. Vemex filed a cross-appeal, challenging the trial judge's refusal to award incidental damages and its summary judgment holdings that Vemex's fraud and breach of warranty claims were barred by the statutes of limitations. The district court had jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction pursuant to 28 U.S.C. § 1291. The parties agree that Texas law applies.

**III.**

On appeal from a bench trial, "the appellate court reviews findings of fact for clear error." *In re Omega Protein, Inc.*, 548 F.3d 361, 367 (5th Cir. 2008).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)). "Findings based on the credibility of witnesses demand even greater deference." *Id.* (internal quotation marks and citation omitted).

No. 11-20723

TVI expressly identifies four factual findings that it contends were clearly erroneous: (1) that the Equipment never became operational; (2) that Vemex made the second $120,000 payment toward the $564,200 due under the Contract for the Equipment; (3) that Vemex informed TVI that the Equipment was defective during the installation period; and (4) that Vemex asked to return the Equipment for a refund and was refused by TVI.

A.

With respect to the trial judge's conclusions that the Equipment never became operational and that Vemex made the second $120,000 payment, TVI argues that the only evidence supporting these findings was the testimony of Valentin Zhevlakov, who served as Vemex's sole Rule 30(b)(6) designee. TVI asserts that the court erred in admitting Zhevlakov's testimony because he lacked personal knowledge concerning those points and his testimony was based on hearsay.

"This court reviews a district court's evidentiary rulings for abuse of discretion, subject to harmless error review." *United States v. Towns*, 718 F.3d 404, 407 (5th Cir. 2013). "In a bench trial, reversal is only warranted if all of the competent evidence is insufficient to support the judgment, or if it affirmatively appears that the incompetent evidence induced the court to make an essential finding which it otherwise would not have made." *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (internal quotation marks and citation omitted). Because we conclude that there was sufficient competent evidence besides the testimony of Zhevlakov to support the trial judge's findings that the Equipment never became operational and that Vemex made the second $120,000 payment, we do not reach the question of whether the trial judge erred in admitting the testimony.

No. 11-20723

1.

With respect to the second $120,000 payment, Zhevlakov testified that a company called ATS had made the $120,000 payment to TVI on behalf of Vemex. TVI concedes that it received a transfer of $120,000 from ATS, but asserts that the payment was unconnected to the Contract. However, although TVI now questions whether the payment it received from ATS was connected to the Contract, it initially credited that payment to Vemex's account. Further, TVI admitted at its 30(b)(6) deposition that it received both payments of $120,000 as provided under the Contract. On that record, it was not clearly erroneous for the trial court to conclude that Vemex made the second $120,000 payment required by the Contract.

With respect to the question of whether the Equipment ever became operational, Vemex relies on, among other things, Trial Exhibit 52, which is an audit report prepared by a engineering consulting firm for Vend, the end-user of the Equipment. The report states: "From February through August 2005, the OOO RUSTEK provided expert installation of the coil-tubing assembly using American specialists in equipment production Technology Ventures, Inc./Drilling & Coiled Technology, Inc. However, specialists from Technology Ventures, Inc./Drilling & Coiled Technology, Inc. did not put the equipment into operation." The report also states that efforts beginning in April 2006, after TVI left the project, were unsuccessful in putting the Equipment into operation and that later work revealed a variety of manufacturing defects.

TVI asserts that Exhibit 52 is hearsay and was erroneously admitted by the trial judge over TVI's objection. Vemex responds that TVI stipulated to the admissibility of Exhibit 52 as a business record early on in the litigation, when both parties agreed that documents produced by third-party Vend would be admissible as business records. The record reflects that the parties did indeed enter into such a stipulation and TVI offers no response to Vemex's arguments

No. 11-20723

on this point. Given that the parties stipulated to the admissibility of Exhibit 52 as a business record, the trial judge did not abuse her discretion in admitting the document. *See* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 803.08[8][c] & n.78 (Joseph M. McLaughlin ed., 2d ed. 2013) (citing cases). In view of Exhibit 52, it was not clearly erroneous for the trial judge to conclude that the Equipment never became operational.

## B.

TVI also asserts that the trial judge clearly erred in finding that Vemex informed TVI that the Equipment was defective during the installation period and that Vemex asked to return the Equipment for a refund and was refused by TVI. The basis for TVI's arguments on these points is that the evidence supporting the factual findings was inadmissible hearsay. In particular, TVI points to Zhevlakov's testimony that he repeatedly informed Evgheniya Pashkevich, his counterpart at TVI, of problems with the Equipment and that he made a request to return the Equipment to her and she refused. The testimony that TVI complains of, however, was not hearsay because it was not offered for the truth of the matters asserted, but rather for the fact that the statements were made. FED. R. EVID. 801(c); *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988). Accordingly, the trial judge did not err in admitting the testimony or in her factual findings concerning the statements described.

## C.

Beyond the above four issues, TVI makes several other challenges to the trial judge's factual findings, although it does not expressly identify them as such. First, TVI argues that Vemex was precluded from revoking acceptance of the Equipment because it altered the Equipment, thereby exercising dominion and control over it. Vemex responds that any alternations were, at most, reasonable use of provisionally accepted goods by a buyer. What constitutes

8

reasonable use of goods, the acceptance of which the buyer later attempts to revoke, "is a question of fact." *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 772 (Tex. App.—Fort Worth 2005) (pet. granted, judgm't vacated w.r.m.). As the trial judge noted, none of the modifications made to the Equipment were material.   Indeed, TVI's own witness testified that the alterations–the addition of a corporate logo and some metal siding to keep the unit warm during the Siberian winter–had no impact on the functioning of the Equipment.   Accordingly, we agree with the trial judge that the purported modifications were not a "substantial change in condition of the goods," Tex. Bus. & Com. Code Ann. § 2.608(b), but simply reasonable use of the Equipment by a buyer prior to its revocation of acceptance, *see Toshiba Mach. Co.*, 180 S.W.3d at 772-73.

TVI additionally asserts that Vemex did not properly revoke acceptance of the Equipment because it failed to seasonably notify TVI of the defects in the Equipment or provide particularized notice of the defects.   Whether Vemex properly revoked acceptance is a fact issue. *Neily v. Arron,* 724 S.W.2d 908, 913 (Tex. App.—Fort Worth 1987, no writ). As noted by the trial judge, Vemex provided TVI with both written and oral notification of specific problems with the Equipment throughout the installation process.  Moreover, as noted above, the trial judge had an adequate factual basis based on the admissible evidence to find that Vemex sought to return the Equipment for a refund and TVI refused.

Finally, TVI argues that Vemex could not have revoked its acceptance of the Equipment because Vemex had already sold the Equipment to Rustek.  As Vemex points out, however, it was acting as a broker and had agreed to sell Rustek an operable item of Equipment before it entered into the Contract with TVI.  If we were to accept TVI's logic, a broker such as Vemex could never revoke acceptance or even initially reject delivery of defective goods. Accordingly, we agree with the trial judge that Vemex's agreement with Rustek did not preclude

Vemex from revoking acceptance of the Equipment.  In a similar vein, TVI argues that Vemex could not have revoked acceptance of the Equipment because Vemex left the Equipment in the custody of Vend.  The evidence at trial, however, was that even after Vend purportedly took possession of the Equipment, Vemex requested to return the Equipment to TVI for a refund.  TVI does not suggest, and there is nothing in the record indicating, that Vemex would have been unable to return the Equipment to TVI if TVI had accepted Vemex's demand to return the Equipment for a refund.

## IV.

Having found that the trial judge did not clearly err in her findings of fact, we turn to her conclusions of law, which we review de novo.  *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).  Given that the contract price for the Equipment vastly exceeds the contract price for the Supervision services, we have little trouble concluding that the Contract was primarily for the sale of goods and is therefore governed by the Texas version of the Uniform Commercial Code.  *See Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 900-04 (5th Cir. 2004) (applying Texas law).

TVI asserts numerous errors by the trial judge, chief among them that the trial judge incorrectly found that Vemex's breach of contract claim was not barred by the statute of limitations.  The parties agree that the relevant statute of limitations period is set forth in Texas Business and Commercial Code § 2.725(a), which provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  "A breach of contract claim arising from the sale of goods accrues when the contract is breached . . . ." *Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc.*, 137 S.W.3d 299, 305 (Tex. App.—Beaumont 2004, no pet.).  The trial judge held that TVI "breached the contract by delivering defective goods and failing to cure the Equipment's defects during installation of the Equipment."  The trial judge

No. 11-20723

further held that Vemex's breach of contract claim "accrued in September 2005, when Defendant ended its attempts to cure the defects in the Equipment while the Equipment was being installed."

Vemex filed suit on December 31, 2008. TVI argues that the statute of limitations began to run on Vemex's breach of contract claim when TVI delivered the Equipment to the Port of Houston for shipment to Russia on August 31, 2004. TVI further asserts that its attempts to cure the defects in the Equipment could not have tolled the running of the statute of limitations. Thus, according to TVI, Vemex's breach of contract claim is untimely because Vemex filed suit over four years after TVI delivered the Equipment.

In response, Vemex offers a number of arguments as to why its breach of contract claim was timely, only one of which we discuss because it is the only one we find persuasive. Specifically, Vemex asserts that, because the contract called for TVI to not only design and manufacture the Equipment but also install it at the end-user's site, the Equipment was only "delivered" when TVI installed (or attempted to install) the Equipment. Because we have found no Texas authority addressing this issue and because Texas law directs that uniform acts such as the U.C.C. be interpreted to make the law consistent throughout the states that have enacted it, we may look to authority from other jurisdictions to determine when delivery occurs when a sales contract obligates the seller to install the goods. *See* Tex. Gov't Code § 311.028; *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 391 (Tex. 2011) ("The UCC should be construed to promote uniformity with other jurisdictions."); *Toshiba Mach. Co.*, 180 S.W.3d at 773 n.2 ("[I]n determining and applying the Texas version of the Uniform Commercial Code, [courts] may consider and apply pertinent decisions from other jurisdictions."); *Mueller v. McGill*, 870 S.W.2d 673, 676 n.2 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("[W]e feel free to look to the law of other states when interpreting the Uniform Commercial Code, if Texas law is

11

silent on the issue.").

"Where installation by the seller is a material part of the contract, there is authority that the breach occurs when the installation is made of the defective goods rather than when the seller tenders the defective goods to the buyer or when the buyer discovers the defect." 4B LARY LAWRENCE, LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE § 2-725:109 (3d ed.). Indeed, the general rule appears to be that "[w]hen installation is required under a sales contract, tender of delivery occurs not when the goods are physically brought to the site, but rather when installation is complete." *Jandreau v. Sheesley Plumbing & Heating Co., Inc.*, 324 N.W.2d 266, 270 (S.D. 1982); *see also, e.g.*, *Baker v. DEC Int'l*, 580 N.W.2d 894, 895 (Mich. 1998) ("We hold that where the seller is obligated to install goods under a contract, tender of delivery does not occur until installation is completed."); *Dowling v. S.W. Porcelain, Inc.*, 701 P.2d 954, 960 (Kan. 1985). Moreover, courts have applied this rule in situations where the seller never succeeds in installing the goods in an operational manner. *See, e.g.*, *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 819 (6th Cir. 1978). ("[A] cause of action accrues upon initial installation of the product regardless whether it functions properly or not . . . .").

TVI's efforts to install the Equipment all occurred between January and September of 2005. Accordingly, the earliest TVI could have delivered the defective Equipment, and therefore the earliest date on which the breach of contract claim could have occurred for purposes of § 2.725(a), is sometime in January of 2005. Because Vemex filed suit within four years of the time that TVI began its efforts to fulfill the Supervision requirements of the contract, its breach of contract claim was timely. Further, because we find that TVI delivered the defective Equipment less than four years before Vemex filed suit, we need not consider whether TVI's efforts to cure the Equipment's defects tolled the running of the statute of limitations. Additionally, because TVI did not

No. 11-20723

begin its installation efforts until early 2005, we need not decide whether, in a case such as this where the buyer never succeeds in installing functioning goods, the claim accrues when the seller begins or abandons its installation efforts. *See Standard Alliance Indus.*, 587 F.2d at 819 (discussing the distinction).

TVI raises several other challenges to the trial judge's judgment, which we may dispose of without much discussion. First, TVI argues that because Vemex initially accepted the Equipment, any cause of action Vemex has concerning defects in the Equipment must be a breach of warranty action, not a breach of contract claim. Where a buyer accepts goods but later revokes that acceptance, however, the buyer has a breach of contract claim under Texas law. *See Trident Steel Corp. v. Wiser Oil Co.*, 223 S.W.3d 520, 525-26 (Tex. App.—Amarillo 2006, pet. denied).

Second, TVI argues that the trial judge erred in awarding as damages the amount Vemex had paid to TVI under the Contract. As the trial judge noted, however, because Vemex revoked its acceptance of the goods, it was entitled to "so much of the price as has been paid." Tex. Bus. & Com. Code Ann. § 2.711(a).

Finally, TVI asserts that the trial judge erred in denying its motion for a new trial, which was based on photographs of the Equipment produced in a related state-court action between Vend and TVI after the trial of the instant case. We will not reverse a trial court's denial of a motion for a new trial unless there is "a clear abuse of discretion." *Union Mechling Corp. v. Carmadelle*, 624 F.2d 677, 679 (5th Cir. 1980)(internal quotation marks and citation omitted). In deciding whether newly discovered evidence requires a new trial, we look to, among other things, whether the evidence could have been discovered earlier with proper diligence. *Id.* Here, TVI presents no information concerning what efforts, if any, it made during the instant case to obtain the photographs that Vend produced in the state-court action. Accordingly, the trial judge did not clearly abuse her discretion in denying TVI's motion for a new trial.

## V.

### A.

Vemex cross appeals on several issues. First, Vemex argues that the trial judge erred in failing to award it incidental damages. The trial judge's Order does not address the issue of incidental damages. After judgment, Vemex filed a motion to alter judgment under Federal Rule of Civil Procedure 52(b) arguing that it had presented sufficient evidence at trial to support a finding that it incurred incidental costs for which TVI should be liable, including: (1) $77,110 for coiled tubing to be used on the Equipment; (2) $45,318.88 for a blow-out preventer to be used on the Equipment; and (3) $37,580 for shipping the Equipment to Russia. The trial judge denied Vemex's motion.

This court reviews the denial of motion to alter or amend judgement for an abuse of discretion. *See United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (internal quotation marks and citation omitted). On the record before us, we cannot find that the trial judge abused her discretion in denying Vemex's motion to amend the judgment to award incidental damages. Even assuming *arguendo* that the costs incurred by Vemex qualified as incidental damages and that incidental damages were permitted under the Contract, the record reveals that there was a fact issue at trial as to whether these losses were suffered by Vemex or instead by a third party. In denying Vemex's motion, the trial judge implicitly found against Vemex on this factual issue. *See French v. Allstate Indem. Co.*, 637 F.3d 571, 580-81 (5th Cir. 2011) (holding that, where an argument is raised prior to judgment and post-judgment in a Rule 52(b) motion, the trial judge's denial of the motion implicitly indicates a rejection of the argument). Because Vemex provides no argument as to why this factual finding was clearly erroneous, we affirm the trial judge's decision not to award Vemex incidental damages.

No. 11-20723

## B.

Second, Vemex argues that the trial judge erred in finding that its fraud and breach of warranty claims were barred by the statute of limitations. In particular, Vemex asserts that the trial judge misapplied the discovery rule with respect to both claims.

## 1.

With respect to the fraud claim, which carries a four-year limitations period beginning at the time of the alleged misrepresentation, the trial judge noted that the only purported misrepresentations Vemex identified occurred no later than September 9, 2004. Accordingly, the trial judge found that Vemex's fraud claim was time-barred. Vemex argues that the trial judge should have applied the discovery rule applicable to fraud claims, which "defers accrual of the cause of action if (1) the nature of the injury is inherently undiscoverable and (2) the evidence of injury is objectively verifiable." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The trial judge found that Vemex could have discovered the purported fraud during the installation process and, as a result, found that the discovery rule was inapplicable.

"An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence. The inquiry focuses categorically on the type of injury alleged rather than on the circumstances of the particular case." *Beavers*, 566 F.3d at 439 (internal quotation marks and citations omitted). Some fraud claims do not involve inherently undiscoverable injuries and therefore cannot take advantage of the discovery rule. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011).

Vemex has made no showing that the type of injury it alleges cannot generally be discovered within the four-year limitations period. It does not argue the point on appeal and instead focuses on whether it acted as a

15

"reasonable buyer," which does not bear on the question of whether the discovery rule applies to its fraud claim. Accordingly, the trial judge was correct to find that the discovery rule did not apply and to hold that Vemex's fraud claim is barred by the statute of limitations.

2.

We need not reach the question of whether the trial court erred in holding that Vemex's breach of warranty claim was barred by the statute of limitations. Vemex presents no argument or authority suggesting that it would be entitled to any relief beyond the breach-of-contract damages awarded by the district court, if it prevailed on its breach of warranty claim. Indeed, Vemex states in its brief that we can "cure" the district court's purportedly erroneous holding concerning its breach of warranty claim simply by "affirming Vemex's right to recover on its contract claim." Accordingly, since we have affirmed the district court's judgment in favor of Vemex on its breach of contract claim, we do not address Vemex's arguments concerning its breach of warranty claim.

**VI.**

For the foregoing reasons, the judgment of the district court is AFFIRMED.