Patrick A. Pirtle, Justice
This appeal arises from a dispute between Appellant, Minsa Corporation, a corn flour supplier, and Appellee, SFTC, LLC, d/b/a Santa Fe Tortilla Company, a corn flour manufacturer, regarding the quality of white corn flour purchased by SFTC from Minsa. Following a three-day bench trial, the trial court entered a net-judgment in favor of SFTC. Presenting four issues in its original brief and reiterated in its reply brief, Minsa challenges the judgment. By issues one and two, Minsa contends there is no evidence or insufficient evidence of (1) a breach of express warranty or contract or (2) causation between the alleged breach and SFTC's claimed damages because it required expert testimony.[1] By issue three, Minsa asserts the trial court erred in its damages calculations in favor of SFTC which were based on speculative and unreasonable loss presumptions and which denied its claim for stipulated damages in the amount of $110,238.54. By its final issue, Minsa disputes the award of attorney's fees to SFTC as being unsupported by the factors in Arthur Andersen & Co. v. Perry Equipment Corp. , 945 S.W.2d 812, 818 (Tex. 1997), or the Lodestar method announced in El Apple I, Ltd. v. Olivas , 370 S.W.3d 757, 764 (Tex. 2012). We affirm in part, reverse and remand in part, and reverse and render in part.
BACKGROUND
Minsa mills, distributes, and sells corn flour used in the production of tortillas *158 and tortilla chips. SFTC produces corn tortillas and corn tortilla chips. In October 2012, SFTC began using Minsa's corn flour in the production of its tortilla chips. Satisfied with the results of the tortilla chips, SFTC considered using other Minsa products in making table tortillas. During negotiations, Minsa made certain representations, including a representation that finished products made with its flour had an estimated shelf life of thirty days. Specifically, the specification sheet for Minsa's Excel 30ES white corn flour provided, "[t]he finished product has an estimated shelf life of 30 days under adequate handling and packaging conditions."
From December 2012 until June 2013, SFTC purchased 320 metric tons of Excel 30ES white corn flour from Minsa. The arrangement was for Minsa to provide the flour to SFTC on credit for forty-five days. In April 2013, SFTC began receiving complaints from its customers that white corn tortillas were breaking before expiration of the thirty-day shelf life. The first documentation of SFTC's complaint to Minsa was reported via a "Customer Complaint Form" on April 23, 2013. The details included in the form provide, "this customer is having problems with the final product the tortilla get [sic] hard and breaks...." Minsa responded by authorizing the return of 274 fifty-pound bags of its white corn flour for which Minsa issued a credit to SFTC.
On April 24, 2013, Minsa sent a technical support team to SFTC's factory to investigate the problem and make suggestions as to how to correct any continuing issues. Based on those recommendations, SFTC increased the amount of softener in its white corn flour products and increased the moisture content of its finished tortillas. Shortly after making these changes, SFTC's customers began complaining about a new shelf-life problem-premature molding. The record established that on June 19, 2013, Kenny Kalfin, SFTC's managing member, emailed David Herrera, Minsa's sales representative, about the mold complaints. Kalfin indicated that tortillas produced on May 30, 2013, and June 4, 2013, turned "moldy" within fifteen to twenty days from production. At that time, Minsa authorized the return of an additional 438 fifty-pound bags of its white corn flour and issued SFTC an accompanying credit.
Due to the continuing quality issues regarding the white corn flour purchased from Minsa, SFTC refused to pay for corn flour from April 2013 to June 2013, and in late June 2013, SFTC ceased using Minsa as its corn flour supplier. In June 2013, Minsa issued a credit to SFTC for credits SFTC had issued to its retail customers in April for tortilla products pulled from store shelves. Minsa did not, however, issue any additional credits for returns SFTC authorized on behalf of its customers thereafter.
When a settlement was not reached on SFTC's unpaid account, on October 15, 2013, Minsa sent a demand letter to SFTC for the outstanding balance of $110,238.54. When payment was not made, Minsa filed suit on December 5, 2013. Minsa alleged claims for suit on sworn account, breach of contract, quantum meruit, and promissory estoppel. In addition to seeking recovery of the balance of the account, Minsa also sought recovery of reasonable and necessary attorney's fees. SFTC generally denied Minsa's claims, and in May 2014, asserted its own counterclaims for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, and violation of the Texas Deceptive Trade Practices Act.
At the commencement of trial, the parties stipulated that SFTC owed Minsa $110,238.54-$48,504.00 for yellow corn *159 flour and $61,734.54 for white corn flour, after all offsets and credits had been given. Based on the evidence and testimony presented, the trial court entered judgment canceling $61,734.54 from the balance owed based on a finding that the Excel 30ES white corn flour was a "non-conforming" good. The court awarded SFTC damages for breach of contract and breach of warranty claims totaling $138,976.67 ("Loss of profits-January 2013-April 2014" of $88,619.68 and "credits to customers and distributors" of $50,356.99), plus reasonable and necessary attorney's fees of $46,325.00. As to the balance of SFTC's account, the trial court awarded Minsa judgment in the sum of $48,504.00, plus prejudgment interest in the amount of $5,269.53, and reasonable and necessary attorney's fees of $22,500.00.
The trial court entered findings of fact and conclusions of law. As relevant to the issues on appeal, the trial court found that the unpaid balance on SFTC's account was $110,238.54 (as stipulated by the parties), which consisted of $48,504.00 for yellow corn flour and $61,734.54 for white corn flour (Findings of Fact 11 and 12). By Conclusions of Law 3, 4, and 5, the trial court concluded that SFTC revoked its acceptance of non-conforming Excel 30ES white corn flour with timely and reasonable notice after Minsa failed to seasonably cure the issues with the white corn tortillas.
SUFFICIENCY OF THE EVIDENCE
In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. MBM Fin. Corp. v. Woodlands Operating Co., L.P. , 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994) ). Those findings, however, are not conclusive when a complete reporter's record is filed if the contrary is established as a matter of law or if there is no evidence to support the findings. Middleton v. Kawasaki Steel Corp. , 687 S.W.2d 42, 44 (Tex. App.-Houston [14th Dist.] 1985), writ ref'd n.r.e. , 699 S.W.2d 199 (Tex. 1985) (per curiam ).
In reviewing evidence for legal sufficiency, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge may only be sustained when the record discloses (a) a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively established the opposite of the vital fact in question. Id. at 810.
A factual sufficiency review requires this court to examine the entire record and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Maritime Overseas Corp. v. Ellis , 971 S.W.2d 402, 406-07 (Tex. 1998), cert. denied , 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed. 2d 450 (1998). When, as here, both legal and factual sufficiency challenges are raised, a reviewing court must first examine the legal sufficiency of the evidence. Glover v. Tex. Gen. Indemnity Co. , 619 S.W.2d 400, 401 (Tex. 1981).
APPLICABLE LAW
Contracts for the sale of goods are governed by chapter two of the Texas Business and Commerce Code.
*160 TEX. BUS. & COM. CODE ANN. § 2.102 (West 2009).[2] Goods are " 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." Id. at § 2.106(b). The crucial factor in determining whether the buyer has a breach of contract or a breach of warranty claim is whether the buyer has finally accepted the goods. Id. at §§ 2.711, 2.714.
Section 2.711 provides generally that a buyer who rightfully rejects or justifiably revokes acceptance, then as to the goods involved, or as to the whole if the breach goes to the whole contract, that buyer may cancel the contract and recover specified damages. Where, however, a buyer has accepted goods and given notice of a breach to the seller under section 2.607(c), section 2.714(a) provides that the buyer may recover damages for any non-conformity.[3] Therefore, whether a buyer has the right to revoke his acceptance impacts the kinds of damages he may recover for a breach when goods are non-conforming. Leifester v. Dodge Country, Ltd. , No. 03-06-00044-CV, 2007 Tex. App. LEXIS 790 at *12 (Tex. App.-Austin Feb. 1, 2007, no pet.) (mem. op.).
Acceptance of goods by the buyer precludes rejection of the goods accepted and, if made with knowledge of a non-conformity, that acceptance cannot be revoked because of non-conformity unless the acceptance was based on the reasonable assumption that the non-conformity would be seasonably cured. § 2.607(b). Critically, revocation of acceptance must occur "before any substantial change in condition of the goods which is not caused by their own defects." (Emphasis added).
ISSUES ONE AND TWO-BREACH AND CAUSATION
By its first and second issues, Minsa contends the evidence is legally and factually insufficient to support SFTC's counterclaims for breach of contract and breach of warranty as well as the causation element of each claim. We agree the evidence is legally insufficient.
Initially, assuming SFTC's quality problems were the result of a non-conforming product (an issue addressed later pertaining to breach of warranty), we address the appropriate legal theory available to SFTC on which it could recover damages. When SFTC began experiencing quality issues with its tortillas, those issues were not discoverable until after production of the finished product. However, after putting Minsa on notice of the quality issues, SFTC agreed to have Minsa's representatives inspect its factory and make recommendations to resolve the quality issues. Accordingly, SFTC continued to accept the white corn flour with knowledge of its potential non-conformity and it even implemented Minsa's recommendations into its tortilla production, i.e., SFTC reasonably assumed the non-conformity would be seasonably cured.
When Minsa's recommendations did not resolve the quality issues, SFTC was unable to revoke its acceptance of the white corn flour because it had "substantially changed" that flour by mixing it with additives and preservatives and altering its composition and function. Cf. Vemex Trading Corp. v. Tech. Ventures, Inc. , 563 Fed. Appx. 318, 324-25 (5th Cir. 2014) (concluding that addition of a corporate logo and metal siding for warmth to a coiled tubing *161 unit for use in arctic drilling did not impact its functioning and was therefore not a substantial change). Additionally, SFTC's continued use of the white corn flour with knowledge of its potential non-conforming nature precluded SFTC from revoking its acceptance. See Trident Steel Corp. v. Wiser Oil Co. , 223 S.W.3d 520, 527-28 (Tex. App.-Amarillo 2006, pet. denied). Therefore, because SFTC accepted Minsa's product and substantially changed it, SFTC was barred from rejecting its acceptance of the white corn flour. Consequently, as a matter of law, the trial court erred in concluding that SFTC revoked its acceptance of the white corn flour and canceling the debt owed to Minsa for that flour.
Accordingly, the proper remedy for SFTC to pursue was a breach of warranty claim under section 2.714 of the Code. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances showed damages of a different amount to be proximately caused by the breach. § 2.714(b). Additionally, in a proper case, incidental and consequential damages under section 2.715 may be recovered.
ANALYSIS-BREACH OF WARRANTY
"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." § 2.313. To recover damages under the theory of an express warranty, a buyer must prove (1) an affirmation of fact or promise made by the seller to the buyer relating to the goods; (2) such affirmation of fact or promise became a part of the basis of the bargain; (3) that the injured party, in making the purchase, relied on the representations, affirmation of fact or promise; (4) that the goods sold by the seller failed to comply with the affirmation of fact or promise made by the seller; (5) that the buyer was financially injured; and (6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer. General Supply & Equipment Co. v. Phillips , 490 S.W.2d 913, 917 (Tex. Civ. App.-Tyler 1972, writ ref'd n.r.e.).
SFTC conceded at trial that the only express warranty applicable provided, "[t]he finished product has an estimated shelf life of 30 days under adequate handling and packaging conditions." Therefore, SFTC bore the burden of presenting legally and factually sufficient evidence to support all the elements of its breach of warranty counterclaim. Farmers & Merchants State Bank v. Ferguson , 617 S.W.2d 918, 920 (Tex. 1981). The critical element in the case before us is causation.
The components of proximate cause consist of cause in fact and foreseeability. Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp. , 299 S.W.3d 106, 122 (Tex. 2009). Evidence of cause in fact is tested, in part, by means of the "but-for" test-i.e., would the alleged harm have occurred but-for or in absence of the party's alleged breach. Rogers v. Zanetti , 518 S.W.3d 394, 402 (Tex. 2017). Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof. Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 477 (Tex. 1995).
When issues with tortilla breakage began, SFTC provided "mid-April" 2013 as the time that it began receiving complaints from its retail customers. On April 23, 2013, SFTC filed a written complaint with Minsa about the breakage problem. SFTC did not, however, prove the exact date of any customer complaints in order to establish *162 whether the breakage occurred within the estimated thirty-day shelf life of those tortillas. SFTC also did not trace the white corn flour product specifically used in any batch of defective tortillas, nor did it provide a production date for those tortillas. "Mid-April" alone is insufficient to prove that Minsa breached its thirty-day shelf life warranty as to the tortilla breakage issue.
The day after SFTC filed its written complaint, Minsa dispatched a team to SFTC's factory to make recommendations to cure the tortilla breakage. One of those recommendations was to increase the moisture content in its tortilla mixture. Shortly after implementing Minsa's recommendations, SFTC began receiving complaints from its customers that white corn tortillas were molding prematurely. Through Kalfin's testimony, photographs of packages of moldy tortillas, and copies of emails, SFTC sought to prove that Minsa had breached its thirty-day shelf life warranty. On May 29, 2013, an SFTC employee emailed Minsa's sales representative to advise him, "we are having widespread mold problems with all of our white corn tortillas." Kalfin emailed the sales representative on June 19, 2013, informing him that the production dates of the moldy tortillas were May 30, 2013, and June 4, 2013.
During trial, each party presented evidence to place blame on the other for the breakage and mold problems with the tortillas. The evidence consisted of GMPs (good manufacturing practices) and the sanitary conditions of Minsa's plant and SFTC's factory. SFTC's expert, Feliciano Paelmo Bejosano, Ph.D., a chemist, testified that SFTC used a liquid preservative (NSP64TD) in its tortilla formula to extend the thirty-day shelf life to forty-five days and to guard against mold. He explained the effectiveness of preservatives as well as other ingredients and how they interact with the tortilla-making process. He testified that it is possible for tortillas with low moisture content to break but that increasing moisture to produce a softer tortilla could result in spoilage.
During cross-examination, he conceded he had not done any testing to confirm his theory. He further testified in his deposition that testing was necessary to determine the cause of the molding. Twice during cross-examination, Bejosano answered, "[n]o" when asked if he could tell the fact finder the actual cause in fact of the premature molding. On redirect examination, Bejosano confirmed that he was not contacted to provide the cause in fact of the premature molding but solely to give an opinion on whether Minsa's recommendations to reduce hardening and increase softness of tortillas "might have an undesired effect in increasing molding." He simply opined that increased moisture might have had unintended consequences of molding. No other expert testimony was presented by either party as to proximate cause.
"Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." Roark v. Allen , 633 S.W.2d 804, 809 (Tex. 1982). When the negligence at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person, expert testimony must establish the standard of care and the violation of that standard. Simmons v. Briggs Equip. Trust , 221 S.W.3d 109, 114 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (citing FFE Transp. Servs., Inc. v. Fulgham , 154 S.W.3d 84, 91 (Tex. 2004) ).
To a culinary connoisseur of Southwestern cuisine, the tortilla-making process may seem as if it is within a layperson's knowledge; however, the commercial production and distribution of *163 tortillas is a complex business involving microbiology, chemical preservatives, specialized equipment, and proper packaging and distribution that requires expert testimony. See Turbines, Inc. v. Dardis , 1 S.W.3d 726, 738 (Tex. App.-Amarillo 1999, pet. denied) (holding that expert testimony was required on performance of mechanical work on turbine engines); Hager v. Romines , 913 S.W.2d 733, 735 (Tex. App.-Fort Worth 1995, no writ) (holding that application of herbicide via aerial application was not within the experience of a layperson).
Ultimately, SFTC bore the burden of proving a breach of warranty. Although SFTC's only expert conceded he was unable to determine the cause of the moldy tortillas without testing, that was not the purpose of his testimony. SFTC did not present expert or lay testimony to prove that Minsa's product was either defective or the proximate cause of the problems with SFTC's white corn tortillas. Even if we were to assume SFTC somehow established that the breakage or molding was an indication that the white corn flour was non-conforming, SFTC did not prove a causal link between any product delivered and a specific date of production of a defective batch of tortillas, much less trace the date of production of any tortillas to a specific date of breakage or molding sufficient to determine whether the thirty-day shelf life warranty had been breached. As such, SFTC failed the but-for test-that is, SFTC failed to offer any evidence that Minsa's Excel 30ES white corn flour was the sole proximate cause of its defective tortillas or any breach of warranty. Accordingly, the evidence was legally insufficient to establish that Minsa breached its warranty to SFTC. Issues one and two are sustained.
ISSUE THREE-DAMAGES CALCULATIONS
Minsa complains that the trial court incorrectly calculated damages awarded to SFTC. It also complains that the trial court erred in denying its claim for stipulated damages of $110,238.54 ($48,504.00 for yellow corn flour and $61,734.54 for white corn flour). Having found that SFTC did not satisfy its burden on its counterclaims and therefore is not entitled to recovery of damages, we address only the argument that Minsa was entitled to the entire amount stipulated and not just the amount SFTC owed for yellow corn flour.
Minsa and SFTC had an agreement for the sale of corn flour. Minsa would deliver the flour to SFTC on credit expecting payment within forty-five days. At the beginning of trial, the parties stipulated that the balance owed by SFTC to Minsa was $110,238.54 for yellow corn flour and white corn flour. Notwithstanding their stipulation, the trial court entered judgment that Minsa recover $48,504.00 for the yellow corn flour but denied recovery for $61,734.54 for white corn flour on the ground that the product was non-conforming. Having found that SFTC may have accepted non-conforming goods yet failed to prove all the elements of its counterclaims, the trial court erred in finding that SFTC revoked its acceptance of white corn flour and in canceling that portion of the debt owed to Minsa. See § 2.607(a) (providing that a buyer must pay at the contract rate for any goods accepted). Issue three is sustained as to Minsa's claim for contractual damages.
ISSUE FOUR-ATTORNEY'S FEES
By its fourth issue, Minsa complains of the award of attorney's fees to SFTC as being unsubstantiated by the Arthur Andersen factors or the El Apple I Lodestar method. Having found that SFTC did not present sufficient evidence to prevail on its counterclaims, it is not entitled to the recovery *164 of any attorney's fees, pretermitting a discussion on the issue as it relates to SFTC. Accordingly, issue four as to SFTC's attorney's fees is pretermitted.
CONCLUSION
The trial court's judgment is affirmed, in part, as to the award of $48,504.00 for the amount owed by Santa Fe Tortilla Company to Minsa Corporation for yellow corn flour that remained unpaid, prejudgment interest of $5,269.53, and attorney's fees of $22,500.00. We render judgment that Minsa Corporation recover an additional $61,734.54 for the debt owed by Santa Fe Tortilla Company for white corn flour it accepted and for which it did not pay, and we remand this cause back to the trial court for the computation of prejudgment interest through the date of the original judgment. In all other respects, the trial court's judgment is reversed and judgment is hereby rendered that Santa Fe Tortilla Company take nothing on its counterclaims and on its claim for attorney's fees.

SFTC complains that Minsa fails to attack specific findings of fact. However, challenges to unidentified findings of fact may be sufficient if they are included in the argument of the issue, if after giving consideration to the number of findings of fact, the nature of the case, and the underlying elements of the applicable legal theories, the specific findings the appellant complains of can be fairly determined from the argument. See Lujan v. Villa , No. 07-01-0277-CV, 2002 Tex. App. LEXIS 3917 at *7 (Tex. App.-Amarillo May 29, 2002, no pet.) (mem. op.) (citing Holley v. Watts , 629 S.W.2d 694, 696 (Tex. 1982) ).

All references to "section" or "§ " are to the Texas Business and Commerce Code unless otherwise designated.

Section 2.607(c) requires the buyer to provide notice to the seller within a reasonable time after discovery of a breach or be barred from any remedy.